WARREN WARD, Respondent, *v.* EDWARD KILPATRICK, Appellant.

Defendant, being the owner of certain dwelling-houses in process of construction in the city of New York, contracted with plaintiff for mirror frames to be set in places left in the walls for that purpose in the parlors and halls, those in the halls to be arranged to serve the purposes of hat-racks and umbrella stands. The frames were made and fastened to the walls by hooks and screws, they could be removed but their removal would have left unfinished walls ; they formed part of the walls and their construction and finish was made to correspond with the cabinet-work of the rooms. They were designed by the owner to be permanently attached, and to go with the buildings when sold. *Held,* that under the mechanic's lien law applicable to said city (Chap. 379, Laws of 1875) plaintiff was entitled to a lien upon the buildings for the work and materials.

*McKeage* v. *H. F. Ins. Co.* (81 N. Y. 38), distinguished.

In an action to foreclose a lien under the said act, one defense was that the work was not well done. A witness for plaintiff, who testified that he

had been a cabinet-maker for more than eight years, and performed part of the work in question, was asked if the work was "a good job," and if it was "well done." It was objected that the witness was not competent, and that the questions involved a conclusion of law. The objections were overruled. *Held*, no error.

Another witness, a cabinet-maker, was asked if these frames, as set in the house, made a part of it, and if the house would be completely finished without them; this was objected to as immaterial, and that the said act did not authorize a lien upon mirror frames and hat-stands. *Held*, untenable; and that defendant could not upon appeal raise the objection that the opinion of a witness upon the point was not competent.

To a similar inquiry put to another witness, objection was made generally, no ground having been assigned. *Held*, untenable.

Another witness was permitted to testify, under objection and exception, that on a sale of one of the houses the mirror frames, according to general custom, would have passed. *Held*, that the testimony was incompetent, as the question whether the frames become part of the realty under said act was one of law; but that as no possible evil could have resulted the error was not ground for reversal.

Also *held*, that under said act the fact that the lienor had no personal knowledge of the facts stated in the notice of lien was immaterial; that if the notice was in the form, contained the necessary statements and was verified as prescribed, the source of the lienor's knowledge was immaterial.

The amount of the alleged lien was deposited in court. *Held*, that in such case it was not necessary to show the filing of a *lis pendens;* that the lien upon the real estate was discharged by the deposit and shifted to the fund, and a *lis pendens*, therefore, became unnecessary.

Also *held*, that the lienor by a stipulation on trial, waiving judgment for a deficiency, did not waive the benefit of the provision of said statute, declaring that the neglect to file a *lis pendens* shall not abate an action pending to enforce a lien, but that such action may be prosecuted against the person liable for the debt.

(Argued May 11, 1881; decided May 31, 1881.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made January 23, 1880, which affirmed a judgment in favor of plaintiffs, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Joseph Fettretch* for appellant. It was error to receive evidence that the mirror frames became a part of the realty. (*Foote* v. *Beecher*, 78 N. Y. 157; *Ayers* v. *Water Comm'rs*, 22 Hun, 299.) They were matters of furniture for which no lien could be had. (*McKeage* v. *Hanover Ins. Co.*, 10 Weekly Dig. 195; 16 Hun, 239; 81 N. Y. 38.) The knowledge intended by the statute under which plaintiff filed his lien is knowledge gained from personal presence when the agreement was made and from seeing the work done. (*Diossy* v. *Martin*, N. Y. Daily Reg., May 17, 1876; *McElwee* v. *Sandford*, 53 How. Pr. 89; *Mowry* v. *Sanborn*, 65 N. Y. 584.) Warren Ward being incompetent for the want of knowledge to make the verification required by the statute, and the statute only creating a regular and valid notice of claim, when the notice of claim is verified by a person or persons having actual personal knowledge of the facts stated therein, the complaint should have been dismissed. (*Mandeville* v. *Reynolds*, 68 N. Y. 528; *Diossy* v. *Martin*, N. Y. Daily Reg., May 17, 1876.) Plaintiff was bound to prove that his lien was a continuing lien at the time the judgment was rendered. (*Mushlitt* v. *Silverman*, 50 N. Y. 362; *Matthews* v. *Daly*, 7 Abb. Pr. [N. S.] 379; *Stone* v. *Smith*, 3 Daly, 213; *Grant* v. *Vandercock*, 8 Abb. Pr. [N. S.] 465; *O'Donnell* v. *Rosenberg*, 14 id. 62; *Haden* v. *Buddensick*, 6 Daly, 7.)

*Eugene Smith* for respondent. In an action for work done under a contract it is sufficient to show a substantial performance, and that such substantial performance will entitle the plaintiff to recover the contract-price, subject to be reduced by the amount of damage the defendant may counter-claim and prove that he has sustained by reason of defective performance. (*Sinclair* v. *Tallmadge*, 35 Barb. 604; *Vanderbilt* v. *The Eagle Iron Works*, 25 Wend. 665; *Glacius* v. *Black*, 50 N. Y. 145; *Johnson* v. *DePeyster*, id. 666; *Phillip* v. *Gallant*, 62 id. 256.) The work done by the plaintiff was such as is the proper subject of a mechanic's lien under the law. (*Grosz* v. *Jackson*, 6 Daly, 463; *The Hazard Powder Co.* v. *Byrnes*, 12 Abb. 470; *Lockwood* v. *Lockwood*, 3 Redf. 335.) A personal

action of debt and a suit to foreclose the lien could proceed concurrently. (*Gridley* v. *Rowland*, 1 E. D. Smith, 670; *Randolph* v. *Leary*, 4 Abb. Pr. 205; *Maxey* v. *Larkin*, 2 E. D. Smith, 540; *Pollock* v. *Meyer*, id. 541.)

FINCH, J. There is one serious question in this case, and a great many which may be disposed of without difficulty. As to the latter a very brief statement of our conclusions, must suffice.

The action was to foreclose a mechanic's lien under the act of 1875 (Chap. 379), applicable to the city of New York. The defendant was the owner of eight houses in process of construction, and had contracted with plaintiff for mirror frames to be set in the parlor and hall of each house; those in the halls to be arranged to serve the purpose of hat racks and umbrella stands. The work having been completed as plaintiff claimed, he presented his bill, and payment being refused filed the mechanic's lien, which is now sought to be foreclosed.

Upon the trial objections were taken to a series of questions. A witness for plaintiff, one Ennis, was asked if the work was " a good job," and if it was " well done." The objections made were that the witness was not a competent judge, and the inquiry involved a conclusion of law. The witness was a cabinet-maker; had been such for more than eight years; and performed part of the work in question. He was competent to answer, and the manner in which the work was done was one of the issues of fact on trial.

A witness named Henke, who was a cabinet-maker, and had done that kind of work in the construction of houses, was asked if these frames as set in the house made a part of the house; and if the house would be completely finished without these frames. The objection made, was not that the opinion of the witness upon the point was incompetent, but merely that the evidence was immaterial, which conceded its competency, and that the act of 1875 did not authorize a lien upon mirror frames or hat stands. The objections taken furnished no valid reason for rejecting the evidence, and it is unnecessary to debate the one now urged which was not even suggested upon the trial.

To a similar inquiry put to another witness an objection was made generally, and without assigning any ground of error. If that had been done the difficulty might have been obviated. The form of the question could have been changed, or the party might have acquiesced in the incorrectness of the evidence and withdrawn the question entirely. Such an objection, as was here taken, furnishes no cause for reversal. (*Shaw* v. *Smith*, 3 Keyes, 316 ; *Fountain* v. *Pettee*, 38 N. Y. 184.)

The question asked the witness Sniffen whether on a sale of one of these houses the mirror frames and hat racks would have passed to the vendee, according to general usage and custom, was certainly incompetent. It was objected to as such, and the error in overruling the objection would involve a reversal, but for the consideration that no possible evil resulted. The question whether the articles furnished became part of the realty within the meaning and just construction of the act of 1875 was a question of law utterly unaffected by any custom as between vendor and vendee. The facts as to the construction of the frames, their location and necessity, and the manner and purpose of their attachment were wholly undisputed, and left only a legal conclusion to be drawn. We cannot see how that conclusion could be affected by the admission of the evidence objected to. The immateriality of this error will become more obvious when the question of the real or personal character of the frames comes under discussion.

It is objected that no lien, valid in its inception, was established, because the lienor had no personal knowledge of the facts alleged in the notice. The form and contents of that notice are not criticised ; the verification follows the statute ; and it is only the source or means of knowledge of the affiant that is assailed. How he knew is of no consequence. The statute does not dictate the source or origin of his knowledge. Primarily it is enough that he swears that he knows the facts alleged. If they are untrue the defendant may disprove them. If he cannot do that, they must be taken as true, and it is wholly immaterial how the lienor ascertained their truth.

It is further said that the proceeding of the lienor was inef-

fectual, because he did not show affirmatively the filing of a notice of *lis pendens*, within ninety days succeeding the filing of his claim. That provision under the statute has no application to a case where the lien upon the real estate is discharged by the deposit in court of the amount of the debt, as was done in this case. In that event the lien is shifted to the fund ; the controversy ceases to affect the real estate or third persons, and a *lis pendens* becomes unnecessary. The statute accordingly provides in terms that the "neglect to file the notice shall not abate any action which may be pending to enforce the lien, and such action may be prosecuted to judgment against the persons liable for the debt." The learned counsel for the appellant substantially admits the force of this provision, but claims that its benefit was waived by the stipulation made at the opening of the trial. We do not so understand the effect of that stipulation. It waives only judgment for a deficiency. The lienor proposed to pursue his remedy against the fund deposited to the extent of that deposit, and no further. For any balance due him beyond that he relied upon another action and the personal responsibility of his adversary.

Some other minor objections were taken in the case, not important to be considered, and it now becomes necessary to determine the principal question, whether the articles furnished became so attached to the buildings in progress of construction as to justify a lien under the act of 1875. The language of its first section is " every person performing labor upon, or furnishing materials to be used in the construction, alteration, or repair of any building, etc., shall have a lien upon the same." Labor upon the building, materials used in its construction are the test of the lienor's rights. In other words, the work and the materials both in fact and in intention must have become part and parcel of the building itself. The inquiry approaches so nearly the doctrine of fixtures as to make the decisions in that respect authoritative, and the necessary guides to our conclusion. If, as between vendor and vendee,

the mirror frames in question would have passed by a deed of the real estate, without special enumeration or description, it will follow that they formed part of the house, and were elements in its construction, and so furnished a basis for the lien claimed. The general subject was much discussed in this court in *McRea* v. *Central Nat. Bank of Troy* (66 N. Y. 489). The results arrived at were as precise and definite as the nature of the subject would permit, and must form the basis of our judgment. The question arose between mortgagor and mortgagee, and three requisites were named as the tests of a fixture. These were, first, actual annexation to the realty or something appurtenant thereto; second, application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, the intention of the party making the annexation to make a permanent accession to the freehold.

The mirror frames in the present case were actually annexed to the realty. They were so annexed during the process of building, and as part of that process. They were not brought as furniture into the completed house, but themselves formed part of such completion. Those in the hall filled up and occupied a gap left in the wainscoting. They were an essential part of the inner surface of the hall, and of a material and construction to correspond with and properly form part of such inner surface. Those in the parlor fitted into a gap purposely left in the base-board. Both those in the hall and those in the parlor were fastened to the walls with hooks and screws. They could be removed but their removal would leave unfinished walls and require work upon the house to supply and repair their absence.

They were fitted to the use and purpose for which the part of the building they occupied was designed. They formed part of the inner wall. Their construction and finish was made to correspond with the cabinet-work of the rooms. In each house they faced each other and formed the most prominent feature of the internal ornamentation.

They were intended by the owner to be permanently attached

to the buildings and to go with them when sold as essential parts of the construction. Three of the houses were in fact thus sold. The owner testified as to these frames, that he regarded them as "the most attractive portion of the house;" that he stated to the agent of the maker, that it was very important to have a few of the frames in immediately "so that a party who would be desirous of purchasing the house could see these mirrors and hat racks;" that the agreement with Mr. Evers was that he should go on immediately and put in the frames in two or three of the houses - "so as to be able to show what the houses would be, without delay;" that the kind of work he called this particular work, that was to be done, was "cabinet carpentering;" that on one or more occasions he complained of the work not having been done, adding "and that I could not get my houses ready for market;" and that he was very strenuous about having the frames put up "because he wished to show the houses to some parties." These facts indicate very plainly the purpose and intention of the owner to permanently attach the frames to the building and make them a part of the structure. It follows that they became parcel of the realty, and as between vendor and vendee would have passed by deed. The recent case of *McKeage* v. *Hanover Fire Insurance Co.* (81 N. Y. 38) does not conflict with this conclusion. In that case the proof showed that the mirrors "were not set into the walls;" were put up after the house had been built; were capable of being easily detached without interfering with or injuring the walls; and were as much mere furniture as pictures hung in the usual way. The difference between the cases is obvious.

We are of opinion, therefore, that the work done by the lienor was work upon the house, and the materials furnished were used in its construction. The objection that no lien attached cannot be sustained.

We find in the numerous exceptions no sufficient ground for reversal, and the judgment should be affirmed, with costs.

All concur, except FOLGER, Ch. J., absent.

Judgment affirmed.