12L 223
13L 439
14L 156
15L 193
15L 413

## MOSES MILLER v. THE STATE.

1. CRIMINAL LAW. *Evidence. Supreme court practice.* A general objection taken in the trial court to a question, or to the admission or rejection of evidence, if good at all, would only go to substance or competency, not form; and therefore would be of no avail in this court, where the evidence was merely irrelevant, the question leading, or in some respect improper, especially if, in the latter case the answer be such as to render the question innocuous.

2. SAME. *Same.* It is the duty of a party objecting to evidence to communicate at the time to the court and the opposite party the grounds of his objection, and the trial court may and should require him to assign the ground, and his failure so to do would deprive him of the right to rely upon the objection. If this court notices a general objection, it is of favor, not of right.

Miller *v.* The State.

3. SAME. *Same.* An objection to a question may be obviated, or rendered formal and immaterial by the answer; and if the ground of objection does not apply to the answer, there is no error in allowing the answer to go to the jury in the absence of any objection to it.

4. SAME. *Robbery.* On the trial of a party for robbery from the person of the prosecutor the defense may prove the general character of the prosecutor as a drinking man, or his condition as to liquors on the particular occasion, but cannot show, either by the cross-examination of the prosecutor or independent testimony, that the prosecutor was drunk on other occasions, or that he had difficulties with third persons on other occasions by reason of his being drunk or drinking.

5. SAME. *Same.* On a trial for robbery from the person of the prosecutor, where it appeared that the prosecutor was knocked down and his money taken from his pocket, it is sufficient to charge that if the prosecutor was knocked down and the money taken from him by the accused, that would be robbery, without giving the formal definition of the offense, no further charge being called for.

6. SAME. *Same. Charge of court. Supreme court practice.* A general objection to certain parts of the charge by reference to pages of the transcript without more, will not be noticed by the court, if upon examination, the clauses referred to seem to the court to contain no error prejudicial to the defendant.

---

FROM FRANKLIN.

---

Appeal in error from the Circuit Court of Franklin county.　J. J. Williams, J.

W. J. CLIFT and SCOTT DAVIS for Miller.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

Appeal in error from a conviction of the offense of robbery from the person of the prosecutor.

Upon the trial below, the prisoner's counsel made many objections to the rulings of the judge in the

admission or rejection of testimony. . In his brief, the counsel has called our attention to thirty of these exceptions *seriatim,* on which he assigns error. These objections are all general. Not one of them shows any ground for making it, nor is any reason assigned in the brief in support of either of them. In the oral argument, a few of them only were dwelt upon. Curiously enough it has never been authoritatively settled in this State how far this court will notice such objections. A general objection to a deposition, it has long been held, will only go to the competency of the witness: *Garvin* v. *Luttrell,* 10 Hum., 16, as construed in *Barton* v. *Trent,* 3 Head, 170; *Whiteley* v. *Davis,* 1 Swan, 333; *Taylor* v. *Mayhew,* 11 Heis., 596. And, *e converso,* a general objection to the competency of the witness will not avail against the deposition of the witness, or any part of it, if he in fact be competent: *Mt. Olivet Cemetery* v. *Shubert,* 2 Head, 117. So, a general objection to the admissibility of a record or certified document made evidence will not avail as to any defect in form, for the opposite party is entitled to the opportunity to correct the defect: *Ingram* v. *Smith,* 1 Head, 411; *Pickett* v. *Boyd,* 11 Lea, 498. So, if testimony be objected to for an insufficient reason, other reasons cannot be relied on in the appellate court: *Monteith* v. *Caldwell,* 7 Hum., 13. And if an objection be formal rather than substantial, it must be specially taken: *Campbell* v. *Campbell,* 3 Head, 326. · A doubt has been expressed whether a general objection would in any case be sufficient to put the court in error: *Reilly* v. *English,*

9 Lea, 20. Upon principle it is the duty of a party objecting to evidence to communicate at the time to the court and the opposite party the grounds of his objection, for the obvious reason that they should have the opportunity of acting advisedly, and not be entrapped into error: *Garner* v. *State*, 5 Lea, 218; *Fountain* v. *Pettee*, 38 N. Y., 184; *Ward* v. *Kilpatrick*, 85 N. Y., 413. There can be no doubt that the trial court might require the objecting party to assign his ground of objection, and a failure to do so would deprive him of the right to afterwards put the court in error, and it would be well for these courts to exercise the right. The loose practice of the inferior courts upon the subject almost compels this court to adopt a liberal course in criminal cases.

For this reason, we will notice the exceptions which the counsel undertook to sustain in oral argument. Of course, a general objection to a question, because, as is now said, it is leading, of which the oral argument concedes there are several, cannot be noticed. For a general objection, if good at all, would, as we have seen, go to substance or competency, not form: *Looper* v. *Bell*, 1 Head, 374. So of a general objection, where the evidence was competent but irrelevant, of which there are also several. So also if the objection be to a question which was in some respect improper, but the answer was such as to render the question innocuous, of which class there is certainly one, and it may be there are two.

Much stress was laid in the argument upon the ruling of the court on the cross-examination of one-

of the defendant's witnesses.   In his examination in chief the witness said : "I informed John P. Fowler on Sunday after Madden (the prosecutor) was robbed on Saturday night, that Madden's friends suspicioned the Miller boys (the defendant being one of them) of robbing Madden; that the plasterers were suspected. I got my information from Wm. Montgomery.   Fowler was Miller's partner in the contracts for plastering."   The State, upon the cross-examination of the witness, asked him : " What did you tell Fowler at the time you say you informed him the Miller boys were suspected?"   The question was objected to by the defendant, but the objection was overruled.  "Ans. I told Fowler that Madden's friends accused ·the Miller boys of robbing him.   Ques.  What reason did they give?"   Objected to, and objection overruled. "Ans. I told Fowler that Montgomery told me that a man by the name of Reed had said something that made them suspect that the Miller boys had done it.   Reed was visiting Cowan at the time from Alabama.   That seven or eight years ago the defendant had knocked a negro in the head in Alabama."

The first cross-question objected to, if objectionable at all, was rendered harmless by the answer, which was only a repetition of the statement in the examination in chief.   The second cross-question was improper in form, for it called for the reasons given by third persons for their suspicions, when it did not appear from the examination in chief as set out in the bill of exceptions, that those reasons formed any part of the communication between the witness and Fowler

as to which the witness had been interrogated by the defendant. But the answer to the question disclosed the fact that these reasons were communicated to Fowler. The objection to the question was thus rendered formal or immaterial, and the only doubt would be whether the State was entitled to call for the whole of the conversation between the witness and Fowler on the occasion mentioned by the witness on his examination in chief. But the defendant made no objection to the answer, and it was therefore properly allowed to go to the jury. And the State was perhaps entitled to the whole conversation upon well-settled principles, even if objection had been made. *Williams* v. *State*, 3 Heis., 379.

The prosecutor was the proprietor of a drinking saloon, and the defense undertook to show his habits as to drinking, and that he was under the influence of liquor at the time of the robbery. The court properly ruled that the general habit might be shown as well as the prosecutor's condition on the particular occasion. In cross-examining the prosecutor, he was asked whether he was not drunk or drinking on different occasions at other times, when, according to the assumption of the questions he abused, cursed or struck third persons. Objections by the State to these questions were sustained. So, several witnesses were asked by the defendant if they had not had a difficulty with the prosecutor, and whether he was not drunk or drinking at the time. Objections to these questions were sustained. So of questions calling for information from the witnesses as to whether they had seen

the prosecutor drunk on certain specified occasions. The testimony called for in all these instances was competent in a proper case, but clearly irrelevant to the issue before the jury, and introductory of independent matters. Quite a number of objections were taken by the defendant to incompetent questions, which were properly overruled. It would be useless to notice them in detail.

It is assigned as error that the court nowhere in the charge to the jury gives a definition of robbery. This is true. But he tells them, in so many words, that if the evidence shows that the prosecutor was knocked or thrown down, and the money taken from him by the accused, this would be robbery. As robbery is the felonious and forcible taking from the person of another's goods or money of any value by violence, and as the proof showed that the prosecutor was knocked down and his money taken from his person, the statement, taken in connection with the facts, was sufficient, in the absence of any request by the defendant for a further charge. It is of course mere hypercriticism to contend that the charge meant only that the money was taken by the accused, and not that the defendant was knocked down by him.

It is suggested that the court has failed to charge the law applicable to the contradictory statements made by the witnesses in relation to matters material to the issue, and the legal effect of the contradictions unless the testimony is sustained by other reliable evidence. But the charge is quite full upon the subject of contradictions, or what appear to be such in the evidence,

and the duty of the jury in the event they cannot reconcile them, with special reference to the materiality of the testimony. Moreover, no additional charge on the subject was asked for.

The brief of defendant's counsel says: "The charge of the court, commencing on line 13, page 159, and extending to line 12, page 160, is not a fair and legal exposition of the law." The clause referred to contains an explanation of what constitutes a reasonable doubt. Again the brief says: "The charge of the court from line 1, page 168, to line 11, on same page, is not the law." This clause merely tells the jury that they should take all the evidence which bears on the guilt of the accused, and all the evidence tending to show his innocence, and from the whole say whether he is guilty or innocent. There is a similar assignment upon substantially the same language in another part of the opinion. There is also a like assignment on the charge upon the defense of an *alibi*. No defect or error is pointed out in any of these instances. And all we can say is that the several clauses, when taken in connection with the residue of the charge, seem to us to contain no error prejudicial to the defendant.

It is lastly insisted that the evidence does not sustain the verdict. The robbery was committed a little after ten o'clock at night, when the prosecutor was entering his yard gate at the close of his hours of business. He found two persons squatted against the fence, who rose up at his approach, one of whom knocked him down with a club, and the other fired

a pistol at him. They took the money from his pocket while down. The testimony shows that at the particular time the night was clear and starlit. The prosecutor swears that he knew the men who robbed him, and that the defendant was one of them. He described the defendant as wearing dark clothes and a cap, and having his face blacked. He knew the defendant well, and recognized him; saw the white of his eyes, and some white about his eyes, and thought he knew the shape of his face; and identifies him positively. Another witness proves that on the night of the robbery, and about seventy-five yards from the house of the prosecutor, he came upon two men who were talking together in a low tone, but who stopped talking as he approached. He was in four or five feet of them, and thinks one of them was the defendant. He looked like he had a cap on. The other man was one of the plasterers who worked with defendant, but he did not recognize him. Another witness proves that he examined the tracks made by the two robbers, both where they had been squatting and standing up, that night and the next morning. One track was that of a small, well-shaped foot, the other that of a common sized foot. He examined next morning the boots of the defendant and his brother Henry, who was indicted with him. Henry Miller had on a small boot with a small heel, and and the smaller track he had examined corresponded with this boot. The boot of the defendant corresponded in size and shape with the larger track. The smaller track could not have been made by over a

No. 6 or 7 boot, and the larger by over a No. 8 boot. The witness picked up the stick used in knocking the prosecutor down, and the prosecutor's hat, and they both had lime on them. He was also present when the defendant was arrested, and testifies that the defendant said "it was nothing more than he expected—they've got me at last." Some one asked, "what for?" and defendant answered "for robbing Mike Madden," (the prosecutor). Two or three other witnesses present at the arrest testify also that the defendant then said: "It is nothing more than I expected." And even the testimony tending to establish the defense of an *alibi* shows that the defendant, on the night of the robbery, was absent from his sleeping room, in which the witnesses undertook to locate him, long enough to have committed the offense.

The evidence is sufficient to sustain the verdict, and the judgment must be affirmed.