WRIGHT, J.
On December 5,1890, the trustees of the Masonic Hall & Asylum Fund entered into a written contract with the firm of Dickison & Allen, defendants herein, by which the latter agreed to construct and complete said building by May 15, 1892, for $139,500, the last installment, of $28,500, to be paid, “ when the buildings are completely finished and accepted.” It was also agreed “ that no payment shall be made hereunder until the said parties of the second part shall have obtained a certificate from the clerk of Oneida county showing that at the date of such payment no liens or claims have been recorded or filed against said premises or building, which are then unsatisfied of record; and it was further agreed that if the building should not be completed on . May 15, 1892, the contractors should pay $25 as liquidated damages for -each day after that date during which it should remain unfinished, to be deducted from the contract price. On February 14, 1891, before beginning work on the building, the contractors, Dickison A Allen, executed and delivered to the defendant the Salt Springs National Bank of Syracuse, N. Y., an assignment of twenty per cent, of the contract price, to be paid out of the last installment due on the completion and acceptance of the building, as collateral security for the liabilities of Dickison & Allen to the bank then existing, or which might thereafter accrue. Thereafter, Dickison A Allen proceeded with their work until J une 4,1892, when they became insolvent and abandoned the building, and requested the trustees to complete it under the provisions of the contract, which they afterwards did. At the time of said abandonment there remained unpaid of the contract price to become due on the completion of the building, $31,394.39, and there was due to Dickison A Allen for extra work not included in the contract the further sum of $1,672.92, making a total unpaid of $33,067.31. The trustees properly expended, in completing the building $8,478.82, and they are entitled, as damages for the failure of the contractors to complete the building upon the agreed time, to the sum of $800, which makes a total allowed the trustees of $9,278.82. This deducted from the amount unpaid, leaves to be disposed of in these actions $23,788.49, which is less than twenty per cent, of the contract price, mentioned in the said assignment to the bank. Of this account there has been paid into court $21,213.49, and deposited with the Salt Springs National Bank, subject to the order of the court, the balance $2,575. No notice of the assignment to the bank made February 14, 1891, was given the trustees until April 28, 1892, since which time no payments have been made, and none of the lienors had any notice of that assignment until after they had furnished their materials and done their work. On June 4, 1892, Dickison & Allen made a second assignment of said contract to the bank, and also “ all sums and moneys due, or which may become due, for extras, including labor and materials furnished in the erection of said building.” Though this assignment was .absolute in its terms, it was in fact for a further collateral security *792 for indebtedness of Dickison & Allen to the bank, which at the time amounted to $22,920 and some interest, and which, at the commencement of this action, had increased to $32,418,76, for several thousand dollars of which the bank holds other collateralsfrom the wives of Dickison & Allen. Notice of this assignment was served on the trustees June 6, 1892. On May 31, 1892, the defendants Cahill, subcontractors of Dickison & Allen, filed a mechanics’ lien on said building for $1,749.29, which was assigned to the plaintiffs Millar & Murray; and on June 4th, and before the second assignment was delivered to the bank, the Utica Planing Mill filed its lien for $1,091. 89 ; and, after said second assignment was delivered, liens were filed by other parties to these actions, aggregating about $18,000. The bank claims to be entitled to the entire fund by virtue of said assignments. The trustees, by their answer, and each lienor, contend that the lienors are entitled to be first paid; that nothing will become due the bank until it shall produce the certificate of the clerk of Oneida county showing that, in the language o.f the contract, “ no liens or claims have been recorded or filed against said premises or building, which are then unsatisfied of record.” This contention is sound. At the time of the abandonment of the contract by Dickison & Allen there was nothing due them thereon. Nothing could become due except by subsequent acts, which were—First the completion of the contract; and, second, the production of the clerk’s said certificate. The trustees elected to complete the building under that contract, which kept the contract operative, and they possess the right to require the performance of each condition precedent to any payment. The requirement of the certificate was a thoughtful and wise provision in the contract, for the special benefit of the lienors, and of which the bank had knowledge when, it took the assignments. The organization which owns the home is composed of men peculiarly sensitive to equitable obligations and considerations of honor. That unrequited labor or material unpaid for might enter into the construction of that magnificent, monument of Masonic charity would be extremely repugnant to the generous sentiments of the noble fraternity whose gifts formed the fund for their payment. The able and faithful board of trustees understood the danger to the laborers and material men to be apprehended from a possible secret assignment of the contract price bv the contractors, and they undertook to guard themselves against it; they also desired to protect themselves from the annoyance of any legal proceedings respecting any liens ; and they therefore required that the contractors should clear the records from all liens that might be filed, and present proof thereof before demanding payment. The requirement of the certificate was for their mutual benefit, but mainly for that of those who might become lienors under the provisions of the statute, as supplemented by this clause in the contract. To the lienors it was a benefit substantial and vital in its nature but to the trustees the benefit was more of the nature of sentiment, and also of convenience. Had Dickison & Allen completed the contract, they could not have claimed payment for one dollar until they had produced the certi *793 ficate, if required by the trustees, and the bank is in no superior position ; and now, since the trustees and those lienors who have appeared and established their claims join in requiring that certificate, their liens must be paid Those notices of liens which have been filed by several of the defendants, but have not been proved herein, must be adjudged invalid, and be cancelled. In Murphy v. Bank, 30 Hun, 40, the contract provided in effect, that at the completion of the contract the owner (commissioner of public works) should retain such part of the contract price as might be necessary “ to meet the claims ”of all persons who within ten days after said completion should give the owner written notice of the amount due them, and that such money should be retained until liabilities should be discharged. It was held that the plaintiff, who furnished materials and filed the required notice, was entitled to payment in preference to the bank, to which the contractor assigned the contract prior to the furnishing of the materials; that this “provision was made for the protection of all persons who had done work or furnished materials under the agreementand that under it “the assignee of moneys due, and to grow due, under the contract, took them subject to all equities between the contractor and the parties doing work or furnishing materials under it, or for which, under the terms of the contract, the lienors might enforce their claims against him.” See, also, Mechanics' & Traders' Nat. Bk. v. Mayor, etc., of New York, 58 How. Pr. 207, affirmed in 27 Hun, 467; Mechanics' & Traders' Nat. Bk. v. Winant, 1 N. Y. Supp. 659; 16 St. Rep. 902. It is urged by the bank that these cases fire overruled by Lauer v. Dunn, 115 N. Y. 406 26 St. Rep. 412. The provision in that case was to the effect that, if any liens should exist when a payment became due, such payment should not be payable at the stipulated time. In that case the contractor gave an order on the owner to pay a subcontractor an amount before it became due, and it was held that the order took precedence over subsequent lienors; but there was no provision in that case, as in this one, that the liens shall first be absolutely discharged and the record cleared before a payment shall be made. Since the decision of Lauer v. Dunn, supra, and McCorkle v. Herman, 117 N. Y. 297; 27 St; Rep. 333, the only method of effectual protection of laborers, material men and subcontractors from the schemes of unscrupulous contractors by secret assignments of the contract is through the insertion of such a clause as this one in the contract.
But it is urged by the bank that the trustees, only can exact the certificate, and that the stipulation of settlement as to the damages made at the close of the trial between it and the trustees is a waiver of their requirement of said certificate, and that their answer should be considered as amended in that regard ; but I do not so understand the meaning of that stipulation. The preamble recites the claim by the trustees for $3,375 damages for the failure of the contractors to perform their contract, and the issue raised by the bank that such performance has been “ waived, extended or excused by the trustees,” and that the bank and the trustees. *794 have settled “the said matter, things, and differences existing between them, and at issue in this action.”- This latter clause clearly refers only to what is above specified as in issue. The stipulation further provides that the trustees shall pay to the bank $2,575 which shall be full and complete settlement, adjustment, and compromise of all and every claim and demand of said bank against said trustees, etc., as to said moneys so claimed, and also for all and every claim, matter, or thing relating to said contract, in any way or manner whatever involved in the issues in this action, or otherwise. The latter clause, though somewhat ambiguous, I think is only an amplification of the first clause, and is limited to the claims and demands of the bank against the trustees, and was not intended to embrace any claim of the trustees; and this view is sustained by the fact that following that sentence there is a statement of the particular claim of the trustees against the bank which is settled, viz. that “the sum of $800 shall be kept and retained by the trustees as fixed, settled, adjusted and compromised damages sustained by them for the breach of said contract on the part of the defendants Dickison & Allen.” The stipulation, therefore, does not, in terms or by implication, waive the requirement set up by the trustees that, under the contract, the liens must be paid and discharged of record before anything shall become due the bank. Again, the effect of waiver should not, in any event, be given to the stipulation, for the trustees and lienors joined in urging upon the court, throughout the trial, the force of that requirement in their mutual interests; and a court of equity will not permit an amendment to a pleading when, taking into consideration the interests of all parties to the action, the effect of the amendment would be inequitable, unless, as in a case of pleading an admission, there is clear proof of mistake. Miller v. Moore, 1 E. D. Smith, 739 ; Deyo v. Morss, 74 Hun, 225; 56 St. Rep. 364.
The bank further alleges that the Bates lien of $5,750 is illegal, Because he did not complete his sub-contract under Dickison & Allen. But the cause of his ceasing work was the abandonment by Dickison & Allen of their contract. They could not, therefore, object to his payment, and the bank is in no better position. Besides, he completed the contract under the employment of the trustees after they took charge of the work; and this is also a perfect answer to the bank’s objection. Crouch v. Gutmann, 134 H. Y. 45; 45 St. Rep. 470; Van Clief v. Van Vechten, 130 N. Y. 571; 42 St. Rep. 736. The fact that Bates took promissory notes from the contractors for the amounts due as his work progressed did not affect the nature of his original claim, nor his original right to a lien; and, the notes being due and surrendered at the trial, they do not stand in the way of the enforcement of the lien. Jagger Iron Co. v. Walker, 76 N. Y. 521.
As to the lien of Cahill Bros, of $1,747.29, it may be observed that, since it was filed before the second assignment, which purported to cover the amount due Dickison & Allen for extra work, and since the first assignment did not cover that item, it is wholly outside of any effect of said assignments; and without any question *795 this lien is valid to the amount due the contractors for the extra work, viz. $1,672.92.
It is urged by the bank, and by Mr. Lindsley also, that the law will presume that the trustees, in completing the building, first exhausted the fund due the contractors for extra work before using any part of the contract price for that purpose. That is not correct. Equity requires them to first exhaust the contract price in eompleting the contract, before they resort to other moneys in their hands belonging to the contractors. Again, the contract price is the fund which is mentioned in the contract as applicable for that purpose by the trustees.
It is claimed on behalf of Price and others, laborers, that they are entitled to preference over the liens of contractors or subcontractors, without regard to the date of filing; but, it not being alleged or proved that they worked for daily or weekly wages, they are not so entitled. Laws 1887, c. 420.
As to the Talbot lien of $3,500, the objection is made by the bank that it is invalid because the claimant had not fully completed his contract before Dickison & Allen abandoned the building. But he did not willfully abandon his contract, nor refuse to complete it; he only suspended work “until he saw where his pay was coming from ;” and, he having completed it under the direction of the trustees, who in the completion of the building are regarded in the law as the agents of Dickison & Allen in carrying out their contract, the objection is not forceful. Van Clief v. Van Vechten, supra. The bank further objects to this lien on the ground that it was not filed within ninety days’ statutory time; that the last work on the contract was performed in January, 1892, and the lien not filed until June, 1892; but I find from the conflicting evidence that Talbot’s last work under Dickison & Allen was done in May, 1892.
The bank further urges that, there being no proof of the filing of a Us pendens on the behalf of any party, and since more than one year has expired since the filing of the various notices of lien, they have expired, and these actions cannot be maintained. Laws 1885, c. 342, § 6, and Danziger v. Simonson, 116 N. Y. 329 ; 26 St. Rep. 708, are cited to sustain that position. But, the trustees having paid into court the entire amount which remains unpaid, those objections do not apply to these cases or liens. “ The lien is shifted to the fund, and the lis pendens becomes unnecessary.” Sheffield v. Robinson, 73 Hun, 173; 57 St Rep. 146; Ward v. Kilpatrick, 85 N. Y. 413.
A multitude of other questions are raised by the various parties, but it is unnecessary to discuss them. The lienors are entitled to payment in the order of the filing of their liens, and the plaintiff Bates, and Millar & Murray as defendants in the Bates action, are entitled to their taxable costs and disbursements, and each lienor (where several appear by one attorney they being regarded as one) is entitled to a trial fee and disbursements, to be paid out of the fund, and the bank is entitled to the remainder, and all the liens must be canceled from record. Findings in one set, covering all the claims, may be prepared accordingly by the attorneys for the plaintiffs in these actions.