GENERAL CONSTRUCTION COMPANY, VINCENT ADERENTE, ACME ROAD MACHINERY COMPANY, and FIRST NATIONAL BANK OF ALBANY, N. Y., Claimants, *v.* STATE OF NEW YORK. Claim No. 2031-A.

(State of New York, Court of Claims, July, 1918.)

Contracts — substantial performance — when claimant entitled to recover — assignments — highways — Laws 1909, chap. 30.

A contract for the improvement of a state highway having been made with the commissioner of highways as authorized by chapter 30 of the Laws of 1909, the contractor made an assignment of all sums due or to grow due thereunder to claimant, with power to collect and sue for them in its name. All work done under the contract was done by claimant and various later assignments of funds due or to accrue under the contract were made by the contractor to claimant and others. Upon the completion of the work the engineer in charge having reported the road for acceptance to his superior, he, the division engineer and the county engineer examined the road for final inspection and as a result presented a list of items of work to be done by the contractor. Several months later another inspection was made as a result of which the contractor was directed by the engineer in charge to complete certain other items of work as

a condition to acceptance and to do certain work not necessitated by any fault of the contractor but due to an error in the original plan. Upon the hearing of a claim to recover the amount alleged to be due, *held*, that claimant having substantially performed the contract is entitled to recover, except as to certain items for extra work not within the original contract.

CLAIM for compensation for work done under contract.

John C. Wait, for claimants General Construction Company, Vincent Aderente, and Acme Road Machinery Company.

Tracey, Cooper & Townsend (B. J. Savage, of counsel), for First National Bank of Albany, N. Y.

Henry P. Nevins, deputy attorney-general, for state of New York.

CUNNINGHAM, J. On March 20, 1911, the claimant General Construction Company entered into a contract with the commissioner of highways, under chapter 30 of the Laws of 1909, as amended, for the improvement of the Hollowville-Craryville County Highway No. 763 in Columbia county. On April 13, 1911, the General Construction Company duly assigned to the claimant Vincent Aderente all sums due or to become due to it under the contract, empowering Aderente to collect them, and to sue in its name. Subsequently, Aderente entered upon performance of the contract, and all the work done under it has been done by him. Various later assignments of funds due or to accrue under the contract were made by the General Construction Company, by Aderente, its attorney, to the claimant First National Bank of Albany, N. Y., and to the claimant Acme Road Machinery Company, of Frankfort, N. Y.

The original contract provided for the construction of a bituminous macadam road of two courses of broken stone, each three inches thick in place. On April 29, 1912, after two miles of the road had been completed according to these specifications, a supplemental contract was entered into between the contractor and the state, changing the specifications and type of road, by providing for the construction of a six-inch sub-base of larger and heavier stone, in lieu of the lower three-inch course of broken stone originally provided.

In early August, 1913, the engineer in charge, one Biggi, reported the road for acceptance to his superior. A few days later, on August 11, 1913, the division engineer and the county engineer, superiors of Biggi, accompanied by the latter, examined the road for final inspection, and as a result presented a list of eleven items of work to be done by the contractor before acceptance. Subsequently, on November 8, 1913, the county engineer, the division engineer and representatives of the contractor again inspected the road, and as a result of this inspection the contractor was directed by the engineers to complete sixty-nine other items of work as a condition to acceptance. At the same time the engineers directed the contractor to increase the slope of an embankment at the Harlem railroad crossing, from a slope of one on one to a slope of one and one-half on one, and for that purpose to excavate the necessary earth from borrow pits and place it in the embankment. The last item of work was not necessitated by any fault of the contractor, or by any failure of the latter to erect the first embankment properly, but was due to an error in the original plans. The engineers promised that the contractor would be paid out of the funds available for the construction of the road, in order to

obviate payment from the maintenance fund available to the department, and the depletion of the latter fund. All the items of work which the engineers directed the contractor to perform were completed by December 18, 1913. Subsequently, on January 28, 1914, under a special agreement, the contractor did further work on the road, at the instance of the commissioner of highways, amounting to $6,980.22. This work was completed and included in estimate No. 17, on March 20, 1914, and at that time the contractor was paid on account thereof, $5,964.59, leaving a balance for this work of $1,015.63. During the progress of highway construction, the contractor, by direction of the engineer in charge, decreased the grade of the crown of a hill three feet lower than shown on the plans forming a part of the contract, which excavation amounted to 1,121 cubic yards of rock and fifty-seven cubic yards of earth. Elsewhere, in the course of the construction, the engineer in charge changed the line of the road laterally from that shown on the plans, and as a result the contractor was obliged to excavate in hard material, which was not actually rock, but which was more difficult to excavate than rock, and which was composed in large part of cemented gravel. The last estimate made by the commissioner of highways was on March 20, 1914, and purported to include the work done to that date. At or about that time a payment was made on account to the contractor, the state retaining as the ten per cent provided by the contract to be retained until final acceptance the sum of $1,015.63, remaining unpaid on the work done pursuant to the special agreement of January 28, 1914, and the sum of $10,151.31 on the work included in the original and first supplemental contracts, a total of $11,166.94, none of which has been paid.

On or about June 5, 1914, final acceptance not hav-

ing been had, the then commissioner of highways, John N. Carlisle, sent two engineers from the office of his department to examine the road to determine if it had been properly and honestly constructed. These engineers, Culver and Cox, made eleven excavations in the road metal, four being in the two-mile portion consisting of two three-inch courses of broken stone, and the remainder in the other 5.14 miles of the road. Following is the result as shown in Culver's report:

| STATION | | Top | Total |
|---|---|---|---|
| 671 plus 60............... | C. L...... | $2\frac{3}{4}''$...... | $7''$ |
| 654...................... | .......... | .......... | 12' wide |
| 643 plus 75............... | C. L..... | $2\frac{3}{4}''$...... | $7\frac{1}{2}''$ |
| 624 plus 50............... | C. L..... | $2\frac{1}{2}''$...... | $7\frac{1}{2}''$ |
| 557 plus 50............... | C. L..... | $3\frac{1}{4}''$...... | $9''$ |
| 501 plus 50............... | E. edge... | $1\frac{1}{2}''$...... | $6\frac{1}{2}''$ bottom 5'' shale |
| 473 plus 30............... | C. L..... | $3''$....... | Gravelly with considerable loam |
| 455 plus 50............... | C. L..... | $3''$....... | $7\frac{1}{2}''$ gravelly clay or loam |
| 380 plus 00............... | C. L..... | $3''$....... | $6\frac{1}{2}''$ |
| 357 plus 00............... | C. L..... | $3''$....... | $6\frac{1}{2}''$ |
| 328 plus 00............... | C. L..... | $3''$....... | $6''$ |

Later, Commissioner Carlisle had an interview with engineer-in-charge Biggi, and the commissioner testified, in substance, that Biggi then admitted this report to be accurate, and asked to be allowed to resign, and that Biggi requested an opportunity to go to the road and measure the places mentioned, and that Carlisle then ordered an engineer " sent out there with Biggi and show him the report is correct."

Biggi testified that he denied the report was correct, but told Carlisle that if it was he would be glad to resign, and ought to be prosecuted, and that he urged that another engineer or engineers be sent out with him to ascertain the truth as to the measurements.

As a result of their interview, and the request made

State of New York, Court of Claims, July, 1918.   [Vol. 104.

by Biggi, engineers Cox, Simmons and Biggi were sent out from the office of the commission to re-examine the excavations made by Culver and Cox, and to measure again the thickness of the courses composing the road metal.   Cox and Simmons made a report of the measurements as follows:

| Station | Total thickness | Top course | Original required thickness | Original required top |
|---|---|---|---|---|
| 671 plus 60 | $8\frac{1}{4}''$ | $3''$ | $9''$ | $3''$ |
| 643 plus 75 | $8\frac{1}{2}''$ | 3 plus | $9''$ | $3''$ |
| 624 plus 50 | 9 minus | $2\frac{3}{4}$ | $9''$ | $3''$ |
| 501 plus 50 (edge) | 7 | 2 | $9''$ | $3''$ |
| 473 plus 30 | 6* | 3 (former meas.) | $6''$ | $3''$ |
| 455 plus 50 | 8 | $2\frac{3}{4}$ | $9''$ | $3''$ |
| 417 plus or minus | $8\frac{1}{2}$ (water in in hole) | 3 (former meas.) | | |

\* Bottom course found crushed stone and gravel at this spot.

The following measurements, taken on the previous examination, we did not consider it necessary to check:

| Station | Total thickness | Top course | Original required thickness | Original required top |
|---|---|---|---|---|
| 557 plus 50 | $9''$ | $3\frac{1}{4}''$ | $9''$ | $3''$ |
| 380 plus 00 | $6\frac{1}{2}$ | 3 | 6 | 3 |
| 357 plus 00 | $6\frac{1}{2}$ | 3 | 6 | 3 |
| 328 plus 00 | 9 | 3 | 6 | 3 |

Mr. Biggi testified that these measurements were accurately taken, with the greatest care.   Mr. Simmons was not sworn by either side.   Mr. Cox testified that the measurements were accurately taken, but that because of the very nature of the material to be meas-

ured, and the conditions involved, the measurements were, to an extent, a matter of agreement and average, and that the second measurements gave to Biggi, as an engineer under charges, the benefit of any doubt, and indicated that the measurements made by Culver and himself were the more accurate. It is undisputed that the road had been in use for a period of between three months and two years before the measurements were taken, and Mr. Biggi testified, without contradiction, that during that period the erosion would decrease the thickness of the top course about one-half an inch. It is also undisputed that the sub-base bottom made of large and irregular stone does not present a regular even surface, nor uniform thickness, and that the tendency of the stone to creep under the roller results usually in the top course varying somewhat in thickness. It also appeared that the specifications povided that the posts used in the construction of 5,570 feet of guard rail along said road should be dipped in asphaltum before being placed, and that they should measure six inches in diameter. They were not dipped, and about one-third of them were found to be under six inches in diameter, varying from four to five and one-quarter inches in thickness. All the posts used averaged practically six inches in diameter. It would have cost the contractor about seventeen dollars and fifty cents to have dipped the posts in asphaltum. Biggi testified that at that time there was much difference of professional opinion as to the desirability of dipping posts, and it does not appear that he called the matter to the attention of the contractor, or required that it should be done. On the contrary, it seems that Biggi was at fault for this omission. After the two inspections of the road last mentioned, the commissioner of highways refused to make further payment in connection with the work,

State of New York, Court of Claims, July, 1918. [Vol. 104.

and finally cancelled the contract for alleged non-performance.

The claimants seek recovery, as follows: *First.* For the retained percentage set forth in estimate No. 17, of March 20, 1914, in the total sum of $11,166.94, less a credit for failure to dip the posts in asphaltum, in the sum of $17.50, a balance of $11,149.44. *Second.* For compensation for completing the eleven items of work required on August 11, 1913, as extra or additional work, in the sum of $763.25. *Third.* For compensation for completing sixty-nine items of work required on November 8, 1913, as extra or additional work, in the sum of $1,517.89. *Fourth.* For increasing the slope of the embankment at the Harlem railroad crossing by excavating earth from borrow pits, and placing it in an embankment at that point, in the sum of $1,560. *Fifth.* For excavating 1,121 cubic yards of rock to decrease the grade at the crown of the hill above referred to, in the sum of $1,513.35, and for excavating fifty-seven cubic yards of earth at the same place, for the same purpose, in the sum of $29.64, a total of $1,542.99. *Sixth.* For excavation as rock and at the contract price for rock, the hard material which was not actually rock, encountered as above set forth, because of the lateral change in the line of the road, in the sum of $525.15.

The state interposes several defenses. The first defense, if well founded, would defeat any recovery at all by the claimants, because it would be effective against the entire claim. It is that the contractor failed to perform his contract exactly or substantially, in that the guard rail posts did not comply with the specifications, were not dipped in asphaltum, and the road metal and its courses were not of the requisite thickness. *Second,* that the items of August 11, 1913, and November 8, 1913, were not extra or addi-

tional work, but constituted finishing up and completion of undone or unsatisfactory work. *Third,* that there can be no recovery for the items last mentioned in any event, or for the increase in the slope of the embankment at the Harlem railroad crossing, or for the excavation of the rock and earth to decrease the grade of the hill crest mentioned, because these matters were not covered by a supplemental contract executed by the commission, as provided by statute.

The principles of law applicable to this controversy are simple. Their application and the determination of the issues of fact involved are somewhat difficult. We have reached our conclusion in this case after careful consideration and much effort to attain a fair and sensible result, under the law controlling our determination.

The first defense urged by the state is not sustained. A claimant is not always barred from recovery by failure exactly to perform his contract. An omission may be so trivial as to be wholly disregarded. Or it may be substantial, and yet be of such a character and under such circumstances as to permit a recovery on the principle of substantial performance. On the other hand, it may be such as to defeat any recovery whatever. The principles applicable need not be discussed at length. We have considered them in a rcent case. *Stanton* v. *State,* 103 Misc. Rep. 221, and cases cited. This contract involved a sum in excess of one hundred thousand dollars. The failure to dip the posts perhaps might be regarded as so trivial as utterly to be disregarded, particularly in view of the circumstances and cause of the omission, but claimants have shown it would have cost about seventeen dollars and fifty cents to dip them. There can be no doubt that this omission ought not to prevent recovery for substantial performance, on deduct-

ing the sum of seventeen dollars and fifty cents from the contract price.

There is no evidence that there was any difference in price between the cost or value of the posts furnished and those specified. The deficiency in size was unnoticed in the inspections of August 11 and November 8, 1913. All the guard rail in place amounted to but $1,336.80. Two-thirds of it were exactly as specified, or better. The contract price of all the guard rail criticised, in place complete, therefore, was but $445.60. The contract provides that the posts shall be set eight feet apart, making each eight-foot section of fence, including one post to each section, cost $1.92, complete in place. It is obvious that the posts are an exceedingly small item in the cost, and that the difference in cost between posts of the size specified and those used, if any, would not exceed a few cents. In a contract of this magnitude, this omission, and the difference in cost, likewise, are too trivial to prevent recovery of the large sum unpaid the claimants. The engineers made two inspections in which the contractor co-operated and displayed no hesitation in meeting their wishes. They did not object to the posts, but pronounced the road satisfactory, except as to other small items, which were remedied. The posts were visible for inspection. That the state raised no objection until a third inspection was made for the purpose of preventing any payment of the balance retained may be considered as indicating that the engineers regarded the variance in diameter as trivial

We are not unmindful of the alleged deficiency in the construction of the road metal. We conclude, however, that the state has failed to establish that it was defective. The road had been subjected to severe traffic for many months. One or more winters had

passed since its construction, with the possible changes wrought by frost and climate. The excavations into the two-course broken stone section showed a thickness of courses equal to or in excess of that specified. No design to slight the work is evident in this portion. Obviously, it would be more profitable to stint that part of the work, because the small broken stone used there is the more expensive to obtain and prepare. We believe the difference in type of construction of the remainder of the road to be responsible for all or much of any variance disclosed. The large stone in the sub-base bottom are uneven and present an irregular surface for the imposition of the top course. Some irregularity in thickness is necessarily a concomitant of such work. We recognize the contractual requirement that the top course should be three inches, and the bottom course six inches, in thickness, and not merely average these dimensions, but it is entirely probable that the conditions found by Culver and Cox, and by the latter, Simmons and Biggi, might be found under these conditions and circumstances, and after the lapse of time involved here, to like extent in any road of the same length, built carefully and in good faith. Seven excavations and measurements were made in that portion of the highway, exceeding five miles in length. The Culver report discloses the road at one of them to exceed the specifications. The report of Cox and Simmons indicates variances, totalling for both courses, from one-half inch to one inch, at the other six excavations. We regard these inspections as failing to establish that the road was not adequately and properly constructed, as against the affirmative testimony of the claimant's witnesses. It is not contended that any of the work provided by the special agreement of January 28, 1914, was improperly performed. We

State of New York, Court of Claims, July, 1918. [Vol. 104.

find, therefore, that the claimant is entitled to recover the retained percentages in the sum of $1,015.63 on the latter agreement, and $10,151.31 on the original contract and first supplemental agreement, less $17.50, with interest from the date of the completion of the work involved in each contract, respectively.

We accept Mr. Biggi's version of his interview with the commissioner. It is evident that the latter's conclusion from Biggi's statement was erroneous. If Biggi admitted the Culver report to be correct and wanted to resign, why would he request the commissioner to send other engineers out to the road again with him, to ascertain the truth, and if the measurements were correct, and why did the commissioner, in the face of the admission, send them? And why, if Biggi wanted to resign, was his resignation or removal not effected, for such an admission was a confession of venality? Biggi's testimony is the more reasonable and logical — when he says he disputed the accuracy of the Culver report and asked that the other engineers be sent to verify or disprove it, and that they were sent accordingly, and that his offer to resign was conditional on its accuracy being established.

The claimants have failed to establish that the items of August 11 and November 8, 1913, were extra or additional work. These items properly were required by the engineers to complete or finish incomplete or defective work. Furthermore, the items hereinbefore designated as Nos. 2, 3, 4, 5 and 6, were not included in or provided by any supplemental contract. There can be no recovery for any work unless provided by the original or a supplemental contract executed by the commission. Laws of 1909, chap. 30. To allow any of these items would cause the quantities provided in the original contract to be exceeded, and would cause the total cost of the road to exceed the contract

price, as modified by deductions and additions necessitated by the first supplemental agreement. The work involved in items 4, 5 and 6 admittedly was not done pursuant to the original plans accompanying and made part of the contract, but was in alteration or variation of them. Although the contract contained items of the same general character as those involved in the claim, it is obvious that the work for which recovery is sought was not performed pursuant to or under the original or any supplemental contract, but was different, extra and additional work, not contemplated by or included or provided in the original contract. Therefore, no recovery can be permitted for these items. *Stanton* v. *State,* 103 Misc. Rep. 221; *Anderson* v. *State,* id. 388.

Moreover, Biggi testified that the excavation involved in item 6 was not actually rock, but hard earth. Earth excavation, within the contract, includes all earth, whether it be hard or soft. The state is not to be credited if the earth happens to be soft and easy to excavate. Nor is the contractor to receive compensation for it as rock, if it happens to be hard and difficult to excavate.

All the items of the claim above referred to, except the first, therefore, must be rejected.

ACKERSON and PARIS, JJ., concur.

Ordered accordingly.