Buchannan v. Cole.

PERRY BUCHANNAN, Appellant, v. EUGENE M. COLE *et al.*, Respondents.

St. Louis Court of Appeals, March 5, 1894.

1. **Mining**: CHARACTER OF CONTRACT. A contract between a mining company and a miner, whereby the former permitted the latter to dig for mineral on certain of its property for a stipulated royalty, is considered and is treated as a lease, though it had no determinate period.

2. **Mechanics' Liens**: MACHINERY FOR BUILDING. The fact that machinery, which is furnished for a building constructed for manu-facturing purposes, is not attached to the freehold, or that it can be removed without injury to the building, will not prevent a mechanic's lien from attaching therefor. The controlling question in such a case is whether the machinery was furnished and received with the intention of forming an integral part of the building.

3. ———: ———. And *held*, that a mechanic's lien attached for such machinery in this cause, wherein it and the building were construct-ed simultaneously and for each other, and neither could be removed without great injury to the other.

4. ———: LUMPING CHARGE. When work is done and materials are furnished under a contract at a fixed price for the whole thereof as an entirety, a lumping charge may be made therefor in an account filed as a mechanic's lien.

5. ———: DESCRIPTION OF PROPERTY. A mechanic's lien account suffi-ciently describes the premises subjected to the lien, if a person acquainted with the locality is enabled thereby to locate them.

*Appeal from the Lawrence Circuit Court.*—HON. W. M.
ROBINSON, Judge.

REVERSED AND REMANDED.

*James R. Vaughan* and *Norman Gibbs* for appellant.

*French & Whitney* for respondents.

BIGGS, J.—The defendant Cole constructed for his
codefendant, the Davie Mining and Development
Company, what is denominated a "gravity plant,"
which is used for hoisting and separating lead and zinc
ores. The plant consists of an engine, boiler, crusher,
reels, jigs, rougher and finisher, shafting, pulleys,
tanks, rods, etc., all inclosed by a building which was
planned and constructed for that particular purpose.
The plant was constructed on mining lots numbered
116, 117, 124 and 125, belonging to the Kentucky Min-
ing Company. Cole employed the plaintiff to erect the
building, for which he agreed to pay $350. The plaintiff
did the work according to contract, and, Cole having
failed to pay him therefor, he filed a mechanic's lien
on the building and machinery, and the land to the
extent of one acre. The present action is against Cole
for the debt and to enforce the lien against the prop-
erty. The defendant bank held a chattel mortgage on
some of the machinery, and for this reason it was made
a party. The separate answer of Cole and the Davie
Mining and Developing Company were general denials.
The bank in its answer averred that it had advanced
money to Cole in making the improvements, and that,
about two months after the completion of the work, it
took a chattel mortgage from him on the machinery to
secure that indebtedness. It seems that Cole, who was
the general manager of the Davie Mining and Devel-

opment Company, had made the improvements under an agreement with the company that he would run the mine and plant on his own account until he was fully reimbursed for his outlays. The answer also set forth that the plant was erected on leasehold property belonging to the Kentucky Mining Company, that the lessors had the right to remove the building and machinery, and that, by reason of this, all of said property was personalty and not subject to a mechanic's lien.

The cause was submitted to the court sitting as a jury. There is no conflict whatever in the testimony. It tends to show that plaintiff did the work in the manner and for the price alleged; that Cole failed to pay him therefor; that the plaintiff had filed his lien paper within the time prescribed by law, and that he had given the Davie Mining and Development Company due notice of his claim. The evidence also disclosed the nature of the machinery and its relation to the building, and also the title or interest of the Davie Mining and Development Company in the mining claims on which the improvements were made. At the conclusion of the evidence the plaintiff asked the court to instruct specially that the machinery became fixtures and, as such, subject to the plaintiff's lien; and he also asked the court to instruct generally that under the uncontradicted evidence all of the issues should be found for him. The court refused the instructions. Judgment was rendered against Cole, but the court found against the plaintiff as to the lien. The plaintiff has appealed.

In support of the judgment it is urged that the Davie Mining and Development Company had a mere license to dig for mineral, which, it is urged, is not sufficient to sustain a mechanic's lien. The facts are these: The Kentucky Mining Company is the owner of quite a large tract of mining land, which it has sub-

divided into mining lots. The company worked the property under a system of leasing, requiring from its tenants or miners a stated royalty on all mineral taken out. Instead of executing formal leases or contracts, the company adopted rules, in which were stated the terms and conditions of lettings, and the only thing required of the miner was to sign a register kept in the office of the company. When this was done, the miner had the exclusive right to dig for mineral on the lot or lots designated so long as he should comply with the terms and conditions of his contract.

Paragraph 4 of the rules provides as follows: "No sub-leasing or renting of lots will be allowed. No transfer of lease, lots or mining claims, or rights, will be recognized by the company, unless the parties acquiring such lots, leases, claims, or rights, have received permission from the said Kentucky Mining Company to mine such lot or claim, and no person or persons will be recognized by the company unless their names are on the register." The rules also provide that, if any of the terms or conditions of the contract are violated, all rights under the contract will be subject to forfeiture, and the company may enter and take possession without notice. In May, 1892, S. C. Johnson & Co. registered on the lots in controversy, and developed the property to some extent. Prior to the construction of the "plant" by Cole, S. C. Johnson & Co. sold and transferred their interest in the contract to "the Davie Mining and Development Company." The latter failed to register on the lots, but the superintendent of the Kentucky Mining Company testified that his company recognized and approved the transfer, and that, at the time the "plant" was erected by Cole, the Davie Mining and Development Company held the exclusive mining rights to the lots.

The fact that the Davie Mining and Development

Company had not formally registered on the lots prior to the erection of the plant, we do not regard of any consequence. The Kentucky Mining Company con- sented to the transfer, and the subsequent signing of the register was a matter of form, and related back to the date of the transfer.

The contract between the Kentucky Mining Company and the Davie Mining and Development Company does not amount to an absolute sale and transfer of all mineral in the specified lots, for the reason that the right of resale is withheld. *Hobart. v. Murray*, 54 Mo. App. 249. Nor is it a mere license to dig and prospect for mineral, which would not be exclusive and would be revocable at the pleasure of the Kentucky Mining Company. *Doe v. Wood*, 2 B. & Ald. 736. It partakes more of the nature of a leasehold, and we will so treat it, although this is subject to the technical objection that, as a contract of letting, it has no determinate period. Therefore, if the plaintiff was entitled to the enforcement of his lien on other grounds, the judgment of the court as to the building and the leasehold was wrong. R. S. 1889, sec. 6708. Whether the purchaser under the execution enforcing the lien would acquire any rights under the leasehold as against the owner of the land, we need not discuss. He would, at least, obtain the right to remove the buildings.

Was the machinery so connected with the building that it became a part thereof, and subject to the mechanic's lien? R. S. Eddy, the superintendent of the Springfield Foundry and Machine Company, fur- nished the machinery for the plant. He testified as follows: "The building was constructed some time in January or February, and was made expressly for the machinery, as was the machinery for the building, and together they constituted what is called a gravity plant. A gravity plant is one in which the mineral flows grad-

ually from one machine to another. The building and machinery are one—one is part of the other. The main building is eighty by seventeen or eighteen, and the wing, where the boiler is set, about twenty by thirty-two feet, and is placed over the shaft. The structure is higher at one end than at the other, higher than necessary, simply to carry off the water from the roof, sloping from about twenty-two feet, twelve feet in height. This is done to accommodate the crusher and other high machinery placed there, which could not be placed under a lower roof than that. We tried to get the building lower at the crusher end, but it could not be made any lower and accommodate the machinery. There is a cupola, or place built higher than the balance of the building, to accommodate and hold the hoisting machinery, which lifts the mineral from the shaft, about one hundred and seventy feet deep, and empties it on the crusher floor. * * * The engine is set in a concrete foundation, about three feet in the ground, and the boiler rests on stones in the eastern floor of the engine room. * * * The crusher timbers or supports are anchored or braced to the building diagonally, from the top to the bottom, the timbers being placed on the foundation of rocks set in the earth. The jigs and jig boxes are nailed to the floor, and the jigs are not set into the floor. * * * The machinery was put into the building while in process of construction, and, by removing either, the connection and supports of the machinery would be destroyed and the building rendered useless for the purposes for which it was designed." The testimony of the other witnesses was to the same effect.

It would serve no good purpose to review the decisions of this court and the supreme court on the subject of fixtures. Nothing would be gained by this, as the question of what is, and what is not, a fixture,

must depend largely upon the facts of each particular case. The fact that machinery, which is placed in a building for manufacturing purposes, is not attached to the freehold, or that it might be removed without damage to the building, does not make such machinery nonlienable articles under the mechanic's lien law. As decided by the Kansas City Court of Appeals in the case of *Cooke v. McNiel,* 49 Mo. App. 81, and by this court in the case of *Sosman v. Conlon, post,* p. 25, the controlling question in such cases is, was the machinery furnished and received with the intention of forming integral parts of a building which was constructed for a certain purpose? This ruling is also supported by the following cases: *Heidegger v. Atlantic Milling Co.,* 16 Mo. App. 330; *Hall v. St. Louis Mfg. Co.,* 22 Mo. App. 33; *Fratt v. Whittier,* 58 Cal. 126; *Dimmick v. Cook,* 115 Pa. St. 573. In *Fratt v. Whittier, supra,* the supreme court of California decided in effect that, if machinery is placed in a building at the time of its original construction for the obvious purpose for which it was erected, and is essential to that purpose, it will be regarded as part of the realty, although the connection between the machinery and the building may be such that it may be severed without physical or lasting injury to either.

The foregoing statement of the law is not opposed to the decision of the supreme court in the case of *Richardson v. Koch,* 81 Mo. 268, upon which the defendant relies. The facts in that case were essentially different. There the court held that the engine and boiler could not be regarded as a part of the building, because they were placed there by a tenant under an agreement with his landlord that they should remain and be treated as personalty, and for the further reason that the machinery was not used in the construction of the building, or afterwards so connected as

to form a part thereof.   Here the uncontradicted evidence is that the house and machinery were constructed for each other; that the machinery was placed in the building during its construction, and that neither one could be removed without greatly injuring the other. Hence the boiler, engine, jigs, etc., became, and were, fixtures, and the court committed error in refusing plaintiff's instruction to that effect.

The lien account is as follows:   "To building plant for crushing and separating ores at Aurora, Missouri, said building being located upon what is known as the Davie Mining and Development Company's land.   The said labor consists in inclosing and erecting buildings seventeen by seventy-five feet, with boiler room twenty by twenty-two feet, crusher, roll and jig frames, and putting in engine bed and foundation for the same, $350."   The lien is claimed upon a certain wooden building described in the lien paper, containing boiler, engines, crushers, jigs and other machinery and appurtenances which are a part of the building, and also a tank adjoining said building and built in connection with it, all forming together a plant for mining purposes, known as the Davie Mining and Development Company's plant, and situated on mining lots numbered 116, 117, 124 and 125, of the Kentucky Mining Company's land, near Aurora, Missouri.   We are of the opinion that the lien paper is sufficient.   It is not objectionable on account of the price being for a lumping sum.   *Grace v. Nesbitt*, 109 Mo. 9.   The contract was so made, and it would have been impracticable, if not impossible, for the plaintiff to state the account otherwise.   The lien shows upon its face that the entire account was for labor in inclosing the building and constructing a foundation for the engine which was placed in the building, for all of which the statute gave the plaintiff a lien.   *Hilliker v. Francisco*, 65 Mo.

599; *Busso v. Fette*, 55 Mo. App. 453.

The question as to the sufficiency of the description of the acre of ground in the lien paper is, under the record, one for the jury. We can not say as a matter of law that it is insufficient. The mining lots are contiguous, and the mining plant is constructed at the central point where the corners of the lot intersect. The ground upon which the plant is located, to the extent of an acre, is described by metes and bounds, commencing at a point twenty-five feet west of the northwest corner of the building. If this description, when supplemented by the plat made by the Kentucky Mining Company, is sufficient to enable a person who is acquainted with the locality to locate the premises intended to be conveyed by the lien, then the issue should be found for the plaintiff. *Holland v. McCarty*, 24 Mo. App. 82; *Bradish v. James*, 83 Mo. 313.

For the reasons stated, the judgment of the circuit court will be reversed and the cause remanded. All the judges concur.