(129 App. Div. 490.)

### RIESER v. COMMEAU et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

1. MECHANICS' LIENS (§ 310*)—FORECLOSURE—COSTS.
    Where the expenses of a mechanic's lien foreclosure were due mainly to the resistance of the contractor, the equity court had the right to impose the costs upon him.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 654; Dec. Dig. § 310;* Costs, Cent. Dig. § 122.]

2. MECHANICS' LIENS (§ 161*)—PROCEEDINGS TO ENFORCE—INTEREST.
    An allowance of interest is proper in a mechanic's lien foreclosure if the amount due is capable of ascertainment by mere computation.
    [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 283; Dec. Dig. § 161.*]

3. MECHANICS' LIENS (§ 26*)—RIGHT TO LIEN—FIXTURES—"IMPROVEMENT."
    Double cases with shelves, exhibition cases, partition base, cupboards, a platform, lockers, dressers, bulletin boards, and supply cases, in a building designed exclusively for a public library, constructed from the same wood as the finish of the rooms in which installed, and fitted to them, and fastened by holdfasts, nails, screws, angle irons and the like, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

without which equipment the building could not be used for library purposes, were an improvement of the realty protected by a mechanic's lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 29; Dec. Dig. § 26.*

For other definitions, see Words and Phrases, vol. 4, pp. 3454–3459.]

4. ESTOPPEL (§ 77*)—EQUITABLE ESTOPPEL.

Where a building contractor contracted with a certain corporation as owner of the premises, and in response to an inquiry by a subcontractor as to who was the owner informed him that such corporation was on the building permit, such building contractor was estopped to deny the ownership of the corporation as against the subcontractor in an action to foreclose his mechanic's lien.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 198; Dec. Dig. § 77.*]

5. MECHANICS' LIENS (§ 111*)—SUBCONTRACTORS.

A subcontractor's lien is not dependent upon the principal contractor obtaining an architect's certificate.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 144; Dec. Dig. § 111.*]

Appeal from Special Term, Richmond County.

Mechanic's lien foreclosure by M. Gustine Rieser against Theodore Commeau, the J. C. Vreeland Building Company, and another. Judgment for plaintiff, and the building company appeals. Affirmed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Frederick Hulse, for appellant.

Myer Nussbaum (J. Sidney Bernstein, on the brief), for respondent.

JENKS, J. This is an appeal from a judgment of the Special Term in favor of the plaintiff in a suit to foreclose a mechanic's lien. The property proceeded against is known as "Public Library No. 12," in the borough of Richmond, city of New York. The New York Public Library, Astor, Lenox, and Tilden Foundation, executed a contract with the Vreeland Building Company for the building thereof. The Vreeland Company made a contract with Commeau to furnish certain material, and Commeau made a contract with the plaintiff for such work and material, save a certain specified part thereof. This action is against the public library as owner, the Vreeland Company as contractor, and Commeau as subcontractor. The Vreeland Company alone appeals. The question whether there was performance was stoutly contested, but the evidence is sufficient to sustain the finding of the court in favor of the plaintiff. The appellant, however, makes, in addition, several points against the judgment, which I shall discuss seriatim.

First, it is said that no sum of money was shown to be due in the hands of the Vreeland Company applicable to the plaintiff's claim, or that, at most, it appears that such sum did not exceed $1,086.73. The lien was filed for $1,535, and the judgment is for $1,657.80, being that amount with interest. But it is admitted in the appellant's pleadings that this sum of $1,535 was due from the library corporation to the Vreeland Company, and it was conceded at the trial that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nothing had been paid by the Vreeland Company to Commeau on account of the contract between it and him. Moreover, the plaintiff gave proof that his contract was practically identical with that made by the Vreeland Company with Commeau, less some work for hardware and glass supplies, and also that three-quarters of Commeau's contract had been performed when his lien was filed. That which remained of Commeau's contract was work of erection which Commeau valued at $400, and the hardware work, amounting to $114.58. Even allowing these items to Commeau, and conceding that they were outside of the contract between Commeau and the plaintiff, there would still be due to Commeau $1,645.42, which exceeded the lien filed. The value of Commeau's contract was $2,160; so that, if 75 per cent. of it had been performed, the amount due him was in excess of the lien. The appellant's contention that a sum not greater than $1,086.73 was due in any event, rests upon its contention that there was evidence that the Vreeland Company had been compelled to complete the work of Commeau to the extent of $1,073, and by the deduction thereof from the amount due to Commeau by the contract price. But these items comprised in the amount of $1,073 were either for erections, or items outside of the plaintiff's contract, or items which the court evidently did not think Vreeland should properly charge against the plaintiff. The court refused to find in favor of the appellant that it was obliged to assume an obligation of $1,016.65 (or any sum) for remedying Commeau's work.

Second, it is said that the Vreeland Company should not pay interest or costs. But the lien on the property did not include the costs, which are charged against the defendant personally. As the expenses of the litigation were due mainly to the resistance of the appellant, the court of equity had the right to impose them upon the appellant. Kenney v. Apgar, 93 N. Y., at page 549. And I think that the allowance of interest was proper. In Excelsior Terra Cotta Co. v. Harde, 181 N. Y. 11, 73 N. E. 494, 106 Am. St. Rep. 493, the court, per Gray, J., say:

"While the old common-law rule has been modified, which required that a demand should be liquidated, or its amount ascertained, before interest could be allowed, the extent of its modification is that if the amount due is capable of being ascertained by mere computation, the allowance of interest is proper. See Gray v. Central R. R. Co. of N. J., 157 N. Y. 483, 52 N. E. 555."

Third, it is contended that the materials furnished were not for the improvement of the realty, but were chattels not affixed. The contract between the plaintiff and Commeau called for double cases with shelves, exhibition cases, partition base, cupboards, a platform, lockers, dressers, bulletin boards, and supply cases. It was required that the materials used in the construction of the various cases, lockers, railing, bulletin boards, etc., shall be of the same wood as the finish of the rooms in which they are installed. There is evidence that the shelves were measured with reference to the rooms and constructed to fit into the spaces, with the exception of one platform expressly made portable. These various articles were fastened to the realty by holdfasts, nails, screws, angle irons, and the like. Kellogg, the defendant's architect, testified that to remove the cases would do ma-

terial injury to them and the wall; that the wall was not finished behind the cases. The question is whether in fact and intention the work and materials have become part and parcel of the building. Ward v. Kilpatrick, 85 N. Y. 413, 39 Am. Rep. 674. Were the labor performed and materials furnished for the purpose of making a permanent accession to the realty? Watts-Campbell Co. v. Yuengling, 125 N. Y. 5, 25 N. E. 1060. Referring to machinery, the court in Buchannan v. Cole, 57 Mo. App. 11, said:

"The controlling question in such cases is, was the machinery furnished and received with the intention of forming integral parts of a building which was constructed for a certain purpose?"

In Union Stove Works v. Klingman, 20 App. Div., at page 451, 46 N. Y. Supp., at page 722, affirmed 164 N. Y. 589, 58 N. E. 1093, the court say:

"While it is true that some portion of the material, for which recovery has been had, could have been removed without difficulty, notably the ranges, the object of the erection of the buildings, and the circumstances surrounding their purchase, and their annexation to the freehold, are sufficient to support the conclusion that it was the intent of the parties that they should be annexed to the realty and pass as fixtures."

The structure was exclusively designed for a public library and devoted to such purpose. The material furnished is all adapted to such a structure, and much of it, e. g., shelves, cases, and the like, could not be used save in like structures. It was constructed to harmonize with the building, and both fitted and fastened to it. The building could not be used for library purposes without it or like equipment. Indeed, the witness Rieser testifies:

"I don't think that building and the walls would be complete without those particular fixtures; it wouldn't be a library, it would be a room."

The inquiry in such a case approaches nearly the doctrine of fixtures. Ward v. Kilpatrick, supra. In Grosz v. Jackson, 6 Daly, 463, the court held, in consideration of the fact that the structure was a theater, that chairs adapted and screwed down in the auditorium for the use of the audience were subject to a mechanic's lien. So desks and platforms in a public school were considered as fixtures. Held v. City of New York, 83 App. Div. 509, 82 N. Y. Supp. 426. And likewise shop shelves set up so as to conform to the building. Rinzel v. Stumpf, 116 Wis. 287, 93 N. W. 36. And the court found upon the conflicting evidence that the said work and materials were actually used in and upon the building on the premises, and, "if there was any evidence to sustain such finding, it followed that the plaintiff was entitled to a lien." Nason Ice Machine Co. v. Upham, 26 App. Div. 422, 50 N. Y. Supp. 197.

Fifth, it is contended that the New York Public Library, Astor, Lenox, and Tilden Foundation, had no interest in the real property improved to which a mechanic's lien could attach. This appeal is by the defendant Vreeland Company alone. But the Vreeland Company made its contract with that library as the owner, and the plaintiff testified that at the time he entered into the agreement he made inquiries at the Vreelands' office as to the owner, and was then told

that the New York Public Library Corporation was on the building permit. I think that the Vreeland Company is estopped to deny the ownership of the public library as against this subcontractor. Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896.

Sixth, it is said that the architect's certificate was not shown to have been given to the Vreeland Company, and hence the plaintiff failed in his proof. In Seeman v. Biemann, 108 Wis., at page 379, 84 N. W., at page 494, the court say:

"A further claim is made that the liens were not enforceable, since nothing was due the principal contractor except upon architect's certificates of satisfactory performance of the conditions of the contract, and the evidence does not show that such certificates were given or were produced upon the trial. We are unable to see how that is material. A subcontractor's lien is not dependent under our statutes upon whether there is anything due the principal contractor. If, in any event, a claim would be lienable under the principal contract in favor of the contractor, it is lienable in favor of his subcontractor, and the right in that regard cannot be impaired by any default of the principal contractor. It would be a strange doctrine under our lien statutes to hold that the neglect of the principal contractor to acquire the right to recover for constructing a building, where it has actually been constructed and is in existence as an improvement upon the proprietor's land, will defeat the right of a subcontractor to look to the property for the payment of his claim."

The judgment must be affirmed, with costs. All concur.