FREDERICK J. PIKE, Plaintiff, *v.* NAYLON SECURITIES COMPANY, INC., and Others, Defendants.

Supreme Court, Erie County, January 9, 1931.

*Clayton M. Smith,* for the plaintiff.

*Barnard B. Swartz,* for the defendant Naylon Securities Company, Inc.

CHARLES B. WHEELER, Official Referee.   This is an action to foreclose a mechanic's lien filed against real property owned by the Naylon Securities Company, Inc., and located at 311 Delaware avenue, Buffalo, N. Y.   A more particular description thereof is contained in the complaint.

The plaintiff is an interior decorator having his place of business in the city of Buffalo, N. Y.

The proof established the fact that in June, 1929, he was approached by Messrs. Bogatin and Machat, representing the Motion Picture Theatre Guild, Inc., a Delaware corporation with headquarters in Philadelphia.   They had a lease of the premises in question for a picture theatre and had agreed to fully equip the same, giving a bond to the Naylon Securities Company, Inc., in the sum of $10,000 to the effect that the said theatre would be fully furnished and equipped.   These gentlemen had organized in Buffalo the Little Theatre Movie Guild, Inc., which was to operate the theatre in question.   After some negotiations in which Mr. Pike conferred not only with them but with a Mr. Goldstein, architect for the defendant Naylon Securities Company, Inc., he finally entered into a contract with the Little Theatre Movie Guild, Inc., to decorate the interior of the theatre and furnish the same on a basis of cost plus ten per cent.

Pursuant to such agreement the plaintiff supplied and installed the following material:

| | | |
|---|---:|---:|
| Paints, etc. | $344 | 00 |
| One green velvet wall hanging | 24 | 00 |
| One yellow damask wall hanging | 20 | 00 |
| One red velvet wall hanging | 42 | 00 |
| Carpets for entire building, 431 yards, at $3.40 | 1,485 | 40 |
| Ozite for entire building, 431 yards, at 60 cents | 258 | 60 |
| 346 opera chairs, at $10.58 each | 3,660 | 68 |
| 5 pair red velvet draperies, with incidentals | 73 | 00 |
| 2 grills with fittings, etc | 30 | 75 |
| Electric fixtures | 586 | 70 |
| 2 exit light boxes with paint, etc. | 86 | 13 |
| | $6,591 | 26 |

The items of labor performed were as follows:

| | | |
|---|---:|---:|
| Painting and decorating | $1,353 | 00 |
| Preparing and installing draperies | 78 | 00 |
| Sewing and laying carpets and ozite, plucking and hemming ends, edging and binding ends, etc. | 154 | 85 |
| Installing grills | 90 | 25 |
| Installing exit light boxes, painting, etc. | 25 | 27 |
| Touching up spots in ladies room | 7 | 23 |
| Commission on electric signs | 74 | 50 |
| Designing sign | 25 | 00 |
| Commission on staining window sashes | 16 | 00 |
| Commission on work done by Paris | 183 | 30 |
| Painting radiators | 12 | 16 |
| Commission on material | 659 | 12 |
| Commission on labor (after deducting the item of $74.50 mentioned above for commission on electric signs) | 260 | 42 |
| | $2,939 | 10 |

The total amount of labor and material furnished was $9,530.36. This does not represent the total amount done pursuant to his contract but does represent the total amount of claimed lienable items. That account for the non-lienable items was extinguished, leaving a balance of $2,607.27 which he applied against the lienable items. The amount due is, therefore, $6,923.09, with interest thereon from December 19, 1929.

The referee will now consider the various matters in dispute between the parties.

## As to the Theatre Chairs.

Among the items for which the plaintiff asserts a lien is the cost of 346 theatre chairs, which were installed by the plaintiff in the theatre. These chairs were made after a special design to harmonize with the decorative scheme carried out in the theatre, and made as to legs to conform with the slope of the floor, and covered with material to conform with the draperies and other interior decorations. They were fastened to the floor in rows by screwing or bolting them down. The defendant, the owner of the building, contends they became and are no part of the realty, and if they otherwise were, that they were purchased by the plaintiff under a conditional bill of sale from the manufacturer, the Heywood-Wakefield Company, by which the title to the chairs was to con-

tinue and remain in the vendor until full payment had been made for them under the terms of the contract, and that, therefore, such opera chairs are not and never became a part of the realty, it being conceded the plaintiff has not up to the present time paid the agreed price to the Heywood-Wakefield Company. This item alone amounts to the sum of $3,660.66 and is the largest item of the plaintiff's claim.

Undoubtedly these chairs could be unscrewed from the floor and taken out, and the rest of the building would remain undamaged.

Were it not for the existence of the conditional contract of sale the referee is of the opinion the chairs so installed would be deemed a part of the realty. If the owner of the theatre saw fit to deed or mortgage the property, we think such deed or mortgage would convey the chairs as a part of the realty. The building was constructed and laid out to be a theatre and nothing else. Without the chairs to accommodate its patrons it would have been of little use. The chairs were an integral part of the theatre. When so equipped did the building become complete for the use for which it was designed.

Under such conditions fixtures installed are to be deemed a part of the realty, and lienable.

It was held in *Rieser* v. *Commeau* (129 App. Div. 490) that shelves, exhibition cases, cupboards, bulletin boards reinstalled in a building designed exclusively for a public library and constructed with reference to the dimensions of the rooms in which they were placed and attached by nails and screws became subjects of a mechanic's lien.

As was said in *Ward* v. *Kilpatrick* (85 N. Y. 413), such " facts indicate very plainly the purpose and intention of the owner to permanently attach the frames to the building, and make them part of the structure. It follows that they become parcel of the realty, and as between the vendor and the vendee would have passed by deed." (See, also, *Watts Campbell Co.* v. *Yuengling*, 125 N. Y. 1.)

It remains, however, to be considered the effect of the conditional contract of sale, by which it was agreed the chairs in question were to be deemed the personal property of the Heywood-Wakefield Company until paid for.

The plaintiff contends that no matter what the rights of the Heywood-Wakefield Company may be as between itself and the plaintiff, nevertheless, the Naylon Securities Company, the owner of the realty, cannot make the defense that the chairs are to be deemed personalty; that as against the Heywood-Wakefield Com-

pany the owner has a perfect right to hold and retain the chairs as realty.

The plaintiff to support this contention stands on the provisions of section 67 of the Personal Property Law (as amd. by Laws of 1930, chap. 874), which reads as follows:

"§ 67. Fixtures. If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become a part thereof and not to be severable wholly or in any portion without material injury to the freehold, the reservation of property as to any portion not so severable shall be void after the goods are so affixed as against any person who has not expressly assented to the reservation. If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part thereof but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sale contract, or a copy thereof, together with a statement signed· by the seller briefly describing the realty and containing the name of the owner thereof and stating that the goods are or are to be affixed thereto, shall be filed before such purchase in the office where a deed of the realty would be recorded or registered to affect such realty. As against the owner of realty who is not the buyer of the goods the reservation of the property in goods by a conditional seller shall be void when such goods are to be so affixed to the realty as to become part thereof but to be severable without material injury to the freehold, unless the conditional sale·contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and containing the name of the owner thereof and stating that the goods are to be affixed thereto, shall be filed before they are affixed, in the office where a deed would be recorded or registered to affect such realty."

It is the latter part of this section which has application to the case now under consideration. In this case there was no statement signed by the seller briefly describing the realty and stating that the goods were to be affixed thereto, and a failure to make such a statement by the statute is declared to render the conditional contract " *void* " as against the " *owner*." The conditional sales contract was signed and assented to by the Little Theatre Movie Guild, Inc., but was not signed or assented to by the Naylon Securities Company, Inc., the owner of the realty. It follows as a logical conclusion that the conditional contract was and is void as to the owner, and the chairs became and are to be deemed a part of the realty and the Naylon Securities Company, Inc., has a perfect

right to resist the removal of the chairs as personal property. In other words the installation of the chairs becoming a part of the realty improved and added to the value of the realty and the claim of the plaintiff for the cost of such chairs became lienable.

There remains another consideration which we think estops the Naylon Securities Company from asserting that the Haywood-Wakefield Company is still owner of the chairs as personalty. It grows out of these facts.

The securities company erected this building for a theatre under a contract with the defendant the Motion Picture Theatre Guild, Inc. By this contract the Motion Picture Theatre Guild, Inc., had a lease with the owner by which it agreed to fully equip the same, and agreed to give a bond in the sum of $10,000 to the effect that said theatre would be fully furnished and equipped, and that such equipment when installed should become the property of the Naylon Company. Such a bond was furnished by the Indemnity Insurance Company of North America.

It seems that the Little Theatre Movie Guild, Inc., was organized as a subordinate corporation to the movie guild and a lease made to it by the movie guild, and with this latter company this plaintiff made his contract to do the work for which the lien of the plaintiff is asserted. After this lien was filed and the Naylon Company had notice of it the Naylon Company began an action against the Indemnity Insurance Company of North America on said bond in which it alleged that said bond was to be released upon submitting to the Naylon Company satisfactory proof that said construction, equipment and apparatus had been fully paid for without any liens or incumbrance thereon, but that the motion picture company had failed to pay for such equipment, and had failed to comply with the conditions of the agreement of suretyship.

The evidence given on the hearing of this action showed that the surety company after the commencement of that action paid on account of the claim to the Naylon Company the sum of $5,500. Whether this was in full settlement of the claim against the surety company does not fully appear. However, the secretary and treasurer testified that instead of applying the $5,500 toward the payment of the plaintiff's claim by reason of what was owing on the chairs he applied the money received to what was owing by the Little Theatre Movie Guild, Inc., for rent and taxes which, however, did not take all the money paid. The undertaking sued on was not conditioned for the payment of rent or taxes.

The Naylon Company got at least enough to pay the amount unpaid on the chairs. It seems to the referee that in equity the Naylon Company was bound to use the money received for the

benefit of the plaintiff by paying his lienable demands, which it did not do. At least having received that money from the surety company it is estopped from now asserting that the chairs remained personal property and no part of the realty.

### As to the Claim of the Plaintiff for Carpets Laid in the Theatre.

The plaintiff has included in his lien an item of $1,485.40 for 461 yards of carpeting laid in the entire building and of $258.60 for ozite laid under the carpeting.

The referee is of the opinion this claim must be disallowed. It is true this carpeting was manufactured under a special order with quality and color to harmonize with the general scheme of the decoration of the interior of the theatre. Nevertheless we are unable to see that it became a part of the realty. It could be easily taken up and improved without damage to the structure. We cannot differentiate this from any other carpeting laid in any other building.

We think the trend of all the authorities is that carpets must be deemed personalty.

In *Mafdes* v. *Beverly Development Corp.* (251 N. Y. 12, 15) Judge Kellogg said in his opinion: " Certain chattels have such a determinate character as movables that they remain personal property, after their annexation to real estate, independently of any agreement between the owner of the chattels and the owner of the realty."

In *Cosgrove* v. *Troescher* (62 App. Div. 123) Mr. Justice Laughlin said: " Some of these articles were, as matter of law, personal property and this necessitates a reversal of the judgment. It is now well settled by authority that carpets, window shades and gas fixtures are movables and not fixtures." (Citing numerous cases.)

The items for carpets and ozite are, therefore, disallowed and should be eliminated from the plaintiff's demand.

The defendant interposes further defenses to the plaintiff's claim, among them as the alleged defense:

That the lien was not filed within four months from the completion of the work.

If not so filed under the statute no lien is acquired. The great bulk of the work and materials was furnished prior to October twelfth. On that day it became necessary to touch up various spots in the ladies washroom due to the fact that the plaster in the room had not been properly dry before the paint was applied, which necessitated the work being done over.

On November twenty-fifth the radiators were painted in the

lavatory and on November 26, 1929, the walls in the ladies room were again touched up and material and labor supplied for that purpose.

On January thirteenth the plaintiff was called to the theatre to examine the drop curtain which was not functioning properly by reason of some defect in its installation. This was corrected. The referee is convinced the evidence sustains the statement of fact as to the time of doing these things. The notice of lien was filed on February 13, 1930, which was within the four months given to do so, and was timely. (*Boyle* v. *Paolini Cafeteria & Restaurant, Inc.*, 220 App. Div. 482; *Colon & Co.* v. *Hassenflug*, 197 id. 522; *Watts-Campbell Co.* v. *Yuengling*, 125 N. Y. 1.)

The defendant makes the further defense that the plaintiff has been paid in full growing out of the following transaction:

The plaintiff was in need of money and was demanding payment of his bill, and on November 8, 1929, Mr. Bogatin, the treasurer of the Little Theatre, issued to the plaintiff eighty-five shares of the capital stock of that company and took from him a receipt for $8,500 which it is claimed was in full of the plaintiff's account. At the same time he made out a check for $8,500 in the name of the Little Theatre which he had the plaintiff indorse back to the Little Theatre. At the same time Bogatin gave back to the plaintiff a receipt in which it was agreed " that the above stock is to be redeemed within forty days as follows:

" 1. Twenty-eight hundred dollars on or before the nineteenth day of November, 1929.

" 2. Fifty-seven hundred dollars on or before the nineteenth day of December, 1929."

When the plaintiff asked for money on November eighth Bogatin replied he had none, but that he would issue some stock as collateral and that he could take it to the bank and try and get a loan to tide him over until funds could be got to apply on account, and that Pike, the plaintiff, thought the stock was to be deemed collateral.

Mrs. Pike testified that when she heard about the issuance of stock she called Bogatin and Machet's attention to the matter and they then stated it was issued as collateral.

After the stock was issued, two payments of $1,000 each and two of $50 each were made to the plaintiff and nothing then said that these payments were to apply on the stock. When Pike was unable to raise money on the stock as collateral Bogatin gave the plaintiff his personal note for $8,500, which has not been paid. The plaintiff's account was placed in Mr. Maulsby Kimball's hands as attorney for collection and conferences were had with Mr. Bogatin when the two $50 payments were made. At those conferences

no claim was made that the stock was given as payment. The whole transaction was apparently a scheme to enable the plaintiff to raise money to meet pressing demands on him, and the subsequent conduct of Mr. Bogatin, representing the Little Theatre, is inconsistent with the claim that the issuance of the stock was in fact accepted as payment. The very use of the word " redeem " clearly indicates that the transaction was but a temporary affair made for a temporary purpose just to help the situation for the time. What was the real purpose and intention of the parties may be gathered from surrounding circumstances. (Luesenhop v. Einsfeld, 93 App. Div. 68.)

It may be shown by parol evidence. (Lane v. Shears, 1 Wend. 433.) Deeds absolute on their face may be shown to have been given as mortgages. (Shields v. Russell, 148 N. Y. 290.)

In Palmer v. Rotary Realty Co., Inc. (109 Misc. 431; affd., 193 App. Div. 887) the court said: " The doctrine is well established by these cases that the real question to be determined in such an action is whether the conveyance was intended to be absolute or. whether it was given as security. If the latter, then no matter what form the transaction took or how binding and formidable were the documents employed to make it appear that the transaction was an absolute conveyance, the court is bound to look beyond the form and ascertain what was the real agreement and true intent of the parties to the transaction."

It has been held that if a right to redeem is reserved in an agreement the conveyance will be deemed a mortgage. (Simon v. Schmidt, 41 Hun, 318; Widmayer v. Warner, 192 App. Div. 499.)

It will be noted that the instrument on which the defendant relies is not an agreement to repurchase, but one to " redeem," indicating a pledge rather than an absolute sale.

The referee has no hestitation in reaching the conclusion that the stock issued was in fact issued simply as collateral, and not as a payment of the plaintiff's claim.

The referee is of the opinion that the following small items should be eliminated from the plaintiff's claim as not going to form a part of the realty, to wit:

One green velvet wall hanging...................... $24 00
One yellow damask wall hanging...................... 20 00
One red velvet wall hanging........................ 42 00
Five pair red velvet draperies..................... 73 00

Let findings be prepared in accordance with the views above expressed.