AJ Contr. Co., Inc. v Farmore Realty, Inc. (2004 NY Slip Op 50540(U))

[*1]

AJ Contr. Co., Inc. v Farmore Realty, Inc.

2004 NY Slip Op 50540(U)

Decided on March 24, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 24, 2004

Supreme Court, New York County
AJ CONTRACTING COMPANY, INC., Plaintiff,
against
FARMORE REALTY, INC. a/k/a FAPMORE REALTY, INC. f/k/a SWEETHEART THEATRES, INC., PRG PLANNING & DEVELOPMENT LLC, SPECIALIZED AUDIO-VISUAL, INC., ALANTE SECURITY GROUP, INC., M&T REAL ESTATE, INC., CONSECO VARIABLE INSURANCE COMPANY, CONSECO ANNUITY ASSURANCE COMPANY, Defendants.
604704/99

Paula J. Omansky, J.
In this action concerning a construction contract and a mechanic's lien, plaintiff PRG Planning and Development LLC (PRG) moves for partial summary judgment, pursuant to CPLR 3212, against defendants Conseco Variable Life Insurance Company, Conseco Annuity Assurance Company (collectively referred to as Conseco), and the American Casualty Company of Reading, PA (the Surety), (1) holding them liable with respect to the mechanic's lien discharge bond, (2) awarding PRG the sum of $2,3999,861.00, representing the amount unpaid on invoices submitted by PRG and approved by defendant LateNite, and scheduling a hearing to assess the amount owed for labor and materials provided subsequent to those invoices, and (3) dismissing Conseco's counterclaim. Defendants Conseco and Surety move for an order, pursuant to CPLR 3212, granting them summary judgment dismissing PRG's mechanic's lien.

Background
In April 1996, defendant LateNite Magic, Inc. leased real property owned by defendant Farmore Realty, Inc. (Farmore) to develop a theme restaurant based on the magic of David Copperfield. In a letter of intent, dated July 31, 1997, PRG agreed to perform contracting work for LateNite (the July 1997 agreement) to implement Copperfield's ideas for the Times Square restaurant (the Project) "for a lump sum fee equal to $3,200,000.00." In particular, PRG agreed to design, construct, and install multimedia, special effects, theatrical and entertainment features on Farmore's premises, located at Broadway and 49th Street in Manhattan (the subject premises).

According to Kevin Baxley, PRG's executive in charge of the Project, PRG stopped working on the Project due to lack of payment in late 1997. By that time, PRG had tendered two applications for payments for its work.
On or about April 2, 1998, PRG caused a notice of mechanic's lien, pursuant to Lien Law article 2 (see Lien Law § 9), for $4,245,060.00, to be filed in the office of the Clerk of the County of New York, against the interests of LateNite and Farmore in the subject premises (the April 1998 lien). On or about August 14, 1998, PRG caused to be filed an amended notice of mechanic's lien for $3,889,180.10 (the August 1998 lien).
[*2]
Conseco purchased $20 million of LateNite's preferred stock and acquired the right to an assignment of the April 1996 lease, in the event of LateNite's default. According to the agreement between Farmore, LateNite, and Conseco, if Conseco elected to cure any default of LateNite under the lease, Conseco would be obligated to perform all of LateNite's obligations under the lease. On or about July 2, 1999, Farmore notified LateNite that it was in default under the April 1996 lease. When LateNite failed to cure the default, Conseco exercised the right to an assignment. Farmore and Conseco entered into a fourth amendment and modification of the lease, dated July 30, 1999. Thus, Conseco is the assignee of all of LateNite's right, title, and interest in the subject premises, including all leasehold improvements.
On or about July 9, 1999, PRG commenced this action to foreclose on the mechanic's lien and for damages arising from construction work performed for LateNite. When PRG filed a motion for default judgment against LateNite, Conseco moved to intervene. The complaint contains six causes of action. PRG alleges that (1) LateNite breached its agreement with PRG by failing to pay PRG for its labor, services, and materials, (2) LateNite owes PRG at least $3,889,180.10 for the fair and reasonable value of PRG's work, (3) PRG has a good and valid lien against the subject premises for $3,889.180.10, which remains due and owing, (4) LateNite and Farmore have been unjustly enriched by not paying PRG for its work, labor, services, and materials, (5) Conseco, as assignee of LateNite's right, title, and interest in the subject premises, is obligated to pay PRG the fair and reasonable value of PRG's work, labor, services, and material, and (6) Conseco has been unjustly enriched by not paying PRG for its work, labor, services, and material. On July 22, 1999, PRG filed a notice of pendency against the subject premises.
On or about September 9, 1999, Conseco posted a bond in the sum of $4,239,500.00 to discharge PRG's mechanic's lien on Farmore's building for $3,889,180.10. Conseco answered the complaint, asserting 11 affirmative defenses and a counterclaim.
Conseco Variable Life Insurance Company assigned all of its right, title, and interest in the April 1996 lease to Conseco Life Insurance Company of Texas (Conseco Texas). In a decision dated September 8, 2003, this court denied the motion of Conseco Variable Life Insurance Company to substitute Conseco Texas as the true party with respect to the subject leasehold in this action, among other things. On November 7, 2003, PRG and Conseco agreed to complete discovery by January 7, 2004, and also agreed that any party's failure to provide discovery shall result in an order of preclusion. At that time, this court denied Conseco's motion to strike the note of issue.

Discussion
PRG's Motion for Summary Judgment
PRG contends that it has established its entitlement to $2,399,861.00, consisting of actual costs listed in PRG's applications for payment to LateNite. PRG submits a letter written by William R. Underhill, identified as President of CEO of LateNite, dated March 16, 1998. Underhill acknowledges that Scenic Technologies Contracting has billed LateNite $2,749,861.00, pursuant to an agreement dated July 31, 1997, and that LateNite paid a $250,000.00 deposit. PRG was known as Scenic Technologies Contracting LLC at the time that the Project commenced. In his affidavit, James Lehner, formerly vice-president of construction services for PRG, and project manager for the Project, states that LateNite approved the [*3]applications for payment. According to Conseco, Lehner's deposition was not completed at the time of this motion.
PRG also submits the affidavit of James Cafarelli, whom LateNite hired in early 1988 to assess the Project and advise LateNite's board of directors how to complete it. He states that he, and LateNite, approved PRG's applications for payment in the sum of $2,749,861.00. According to Cafarelli, LateNite was also entitled to unbilled overhead and profit, and money for work performed beyond the two submitted applications. Cafarelli states that he was negotiating with PRG concerning payments for work on the Project that was not anticipated in the July 1997 agreement.
PRG submits the affidavit of Glen Tullman, who was a member and former chairperson of the LateNite's board of directors. He states that PRG intended to pay PRG's invoices, and compensate PRG for additional work performed that was not yet billed, but LateNite ran out of funds. David Copperfield, in an affidavit submitted by PRG, also states that LateNite intended to pay PRG for its work on the Project. Conseco contends that the submission of Copperfield's affidavit is in bad faith, because PRG represented to Conseco that it had decided not to depose Copperfield.
The applications for payment and the affidavits of persons associated with PRG and LateNite support a prima facie case that LateNite owes PRG $2,399,861.00. PRG has demonstrated that it billed LateNite for its work, and LateNite does not dispute that it owes PRG the amounts requested.
With respect to whether Conseco and the Surety are now liable for LateNite's obligations to PRG, PRG submits deposition testimony of Michael Bonnet, former Senior Vice President of Conseco Private Capital Group. Bonnet was responsible for the private equity investments of Conseco. He testified that he was aware of PRG's mechanic's lien against the building when Conseco assumed the lease, and the landlord required Conseco to bond the lien. The record also contains a release of mechanic's lien bond, purchased by Conseco from Surety.
Conseco disputes whether LateNite approved PRG's applications for payment, and in any event, Conseco claims that LateNite's approval of the applications have no legal consequence against Conseco. According to Conseco, PRG must establish the existence of a valid enforceable lien against the leasehold. Conseco claims that PRG's lien is defective, an issue addressed in Conseco's motion.
Conseco submits the affidavits of McDevitt and William Underhill to show that LateNite never approved the applications for payment, except in the context of negotiating a settlement. William Underhill was the chief executive officer of LateNite. In his affidavit, he states that, to his knowledge, LateNite never agreed to pay PRG on either of the two applications. He does not elaborate on the basis of his knowledge. According to Underhill, PRG's chief executive officer requested a meeting when only a small portion of the payment application was approved. He does not provide any further information about the meeting or subsequent actions concerning the applications.
Liam McDevitt was a managing director at Bennis & Reissman, Inc., and served as the owner's representative for LateNite on the Project. In his affidavit, McDevitt states that PRG did not complete its work on the Project, and opines on the quality of the work. According to McDevitt, he reviewed PRG's two applications for payment, and edited and reduced both [*4]applications prior to forwarding them to LateNite. McDevitt claims the applications were not approved as submitted. McDevitt also asserts that Lehner was not involved in the negotiation of the July 1997 agreement, and that Cafarelli and Copperfield were not sufficiently involved in the Project to comment accurately on PRG's work. According to McDevitt, the value of any labor and materials that PRG provided consisted "solely of some hydraulics, some pneumatics, empty raceways for wiring and some secondary steel" (McDevitt Affid, ¶ 18). Other items remained at or were returned to PRG's warehouse.
In the counterclaim, Conseco alleges that little, if any, of the equipment allegedly manufactured by PRG was delivered to the subject premises, and that PRG removed any delivered equipment. PRG contends that the affidavits of Lehner and David Campbell, a professional engineer, demonstrate that PRG's work involved the essential construction of the subject premises in order to accommodate and power the custom-built machinery, audio-visual, and lighting systems required for the restaurant's illusions. Campbell, who worked for an engineering firm retained by PRG, states that if the illusions were removable in any practical sense, that would not alter the permanent nature of PRG's construction work. Conseco notes that PRG never identified Campbell as a witness, even though PRG was ordered to identify people having knowledge or information relevant to this case.
PRG notes that LateNite's failure to complete construction does not affect the validity of the lien (see Chas. H. Sells, Inc. v Chance Hills Joint Venture, 163 Misc 2d 814, 816 [Sup Ct, Westchester County 1995]; see also Lien Law § 3 ["Within the meaning of the provisions of this chapter, materials actually manufactured for but not delivered to the real property, shall also be deemed to be materials furnished."]). Conseco does not attempt to distinguish Chas. H. Sells, which was cited by PRG in its memorandum. Conseco, however, notes that Lehner admitted in paragraph 59 of his affidavit that some of the material was retained by PRG, and attempts were made to reuse of sell some of that material.
Although both parties discuss Landry v Benjamin (141 NYS2d 710 [Sup Ct, Nassau County 1955]), that case is not relevant. In Landry, the contractor attempted to collect on a portion of the contract that it had not finished and for which it had not been paid. The court held that the contractor did not substantially perform, but the evidence indicated that the contractor had already been paid in an amount approximately proportional to the amount of work completed (id. at 712). Here, PRG has received a small payment, and the parties dispute how much work was actually performed and whether it was for the permanent improvement of the subject premises.
In light of the conflicting factual accounts regarding the improvements on the subject premises, the court denies PRG's motion for summary judgment. PRG's decision to file this motion before discovery was completed may have prevented Conseco from obtaining evidence to defend against this motion. PRG did not offer any arguments demonstrating a prima facie case for summary judgment dismissing Conseco's counterclaim.
Motion for Summary Judgment by Conseco and Surety
Conseco and Surety (collectively referred to as the Conseco defendants) move for summary judgment dismissing PRG's mechanic's lien on the grounds that this action was not commenced within one year of filing the lien, PRG's work on the Project was not for the permanent improvement of the subject premises, PRG wilfully exaggerated its lien claim, and [*5]PRG has retained materials for which it seeks to charge Conseco. The Conseco defendants also move to dismiss PRG's quasi-contractual claims against Conseco.
The Conseco defendants argue that PRG's April 1998 lien has been extinguished by operation of law. Lien Law § 17 provides that a mechanic's lien expires one year after the notice of lien has been filed, unless within that time an action is commenced to foreclose the lien. Because PRG commenced this action in July 1999, the Conseco defendants contend that PRG forfeited its lien claim.
The Conseco defendants also argue that PRG's August 1998 lien was not a proper amendment of the April 1998 lien. Lien Law § 12-a gives a lienor 60 days after the original filing to reduce the amount of the lien. PRG's August 1998 lien was filed more than 60 days after the April 1998 lien.
PRG responds that it is seeking foreclosure on the August 1998 lien, not the April 1998 lien. PRG acknowledges that it entitled the August 1998 lien an amended notice of lien. The August 1998 lien provides more detail about the labor and materials and reduces the lien by approximately $356,000.00. The notice of pendency, dated July 12, 1999, referred to the August 1998 lien only. PRG's complaint, filed on or about July 9, 1999, mentioned the April 1998 lien and August 1998 lien.
None of the cases cited by the parties adequately address whether the August 1998 lien is the only valid and enforceable lien. The court concludes that PRG's use of the word amended in the title of its August 1998 lien has no legal effect (see Madison Lexington Venture v Thomas Crimmins Contr. Co., 159 AD2d 256, 257 [1st Dept 1990] [stating that the Lien Law permits successive liens for the same work]), lv dismissed 78 NY2d 905 [1991]). Lien Law § 10 permits a person to file a notice of lien "at any time during the progress of the work and the furnishing of materials, or, within eight months after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished."
While the Conseco defendants contend that the August 1998 lien is procedurally defective as an amendment the April 1998 lien, they have not identified any deficiencies with the August 1998 lien. PRG appears to have "strictly complied with" the essential requirements of the Lien Law in filing the August 1998 lien (see Ausable Chasm Co. v Hotel Ausable Chasm & Country Club, 263 App Div 486 [3d Dept 1942] [noting that the lienor should have filed prior to the sale of the property which was the subject of the foreclosure action]). The April 1998 lien has lapsed, but the August 1998 lien did not lapse, as PRG commenced this action within one year and filed a notice of pendency (see Lien Law § 17).
Aside from the use of the word amended in the August 1998 lien, the Conseco defendants do not describe how a new lien would differ from an amended lien. Lien Law § 12-a applies only after the eight-month period in which to file a lien expires. If the court held otherwise, lienors who file early would be penalized, because they would only have 60 days to correct or substitute the lien, thereby encouraging lienors to wait until the eighth month, during which time they can gather all information related to the lien. The Conseco defendants have not provided any case law or valid reasoning for burdening lienors that give early notice with a shorter period for altering the lien. Consequently, the court concludes that PRG has substantially complied with the law in filing the August 1998 lien (see Lien Law § 23), which is enforceable in this timely [*6]action.
The Conseco defendants argue that PRG's work does not qualify as a permanent improvement to real property. The Conseco defendants describe PRG's work as the creation of illusions, which are not listed in the Lien Law as an improvement. Although the omission of the word illusion from the Lien Law is no surprise, the Conseco defendants fail to describe the work with any more detail such that application of the Lien Law would be possible.
Courts have repeatedly determined what qualifies as a permanent improvement. The Court of Appeals has noted that gas and electric fixtures, while technically not improvements to real property, are typically left as part of the property (see Wahle-Phillips Co. v Fitzgerald, 225 NY 137, 139 [1919]). Subsequently, courts have held that doors, paneling, carpeting and a kitchen sink were permanent improvements, but lights and mirrors were not (see Dura-Bilt Corp. v Polimeni, 87 AD2d 661, 661 [3d Dept 1982]). The Appellate Division also noted that fact issues may arise in determining whether a particular item is the type which is permanently affixed to the building (id.). As another example, materials adapted to a particular structure, such as custom bookshelves for a library, are considered permanent improvements (see Rieser v Commeau, 129 App Div 490, 493 [2d Dept 1908], affd 198 NY 560 [1910]).
Although they acknowledge the case law, the Conseco defendants assert that the materials furnished by PRG were not intended to be permanent, because they were designed to be moved from one restaurant location to another (see Underhill EBT, at 67-68). The evidence does suggest that some of the work may not have qualified as permanent improvements. Baxley testified that PRG removed audio-visual controls and other control components, while some materials were not removed. Consequently, issues of fact preclude a conclusion that none of PRG's furnished materials or labor were permanent improvements.
The Conseco defendants contend that PRG wilfully exaggerated the amount of the lien. Lien Law § 39 provides:

In any action or proceeding to enforce a mechanic's lien upon a private or public improvement or in which the validity of the lien is an issue, if the court shall find that a lienor has wilfully exaggerated the amount for which he claims a lien as stated in his notice of lien, his lien shall be declared to be void and no recovery shall be had thereon.
A determination of wilful exaggeration requires proof that the lienor deliberately and intentionally exaggerated the lien amount (see Pratt Gen. Contrs. v Trappey, 177 AD2d 566, 568 [2d Dept 1991]).
The Conseco defendants accuse PRG of confusing its lien claim with its contract claim. According to the Conseco defendants, PRG cannot articulate a single credible reason why its lien is $4 million when it did not complete the Project and retained possession of all of its materials. PRG describes the Conseco defendants' claim of wilful exaggeration conclusory and frivolous.
The court concludes that the Conseco defendants' argument, unsupported by references to any specific record evidence of intent, is not sufficient to void the mechanic's lien (see Coppola Gen. Contr. Corp. v. Noble House Constr. of NY, Inc., 224 AD2d 856, 857 [3d Dept 1996]). The Conseco defendants' arguments concerning overstatements conflict with PRG's assertions of approved applications for payment and claims for other materials provided, which were not [*7]included in the July 1997 agreement. To the extent that the Conseco defendants raised new arguments in their reply memorandum, the court did not consider them.
The Conseco defendants argue that because PRG's materials were not incorporated into the subject premises, PRG has no lien claim. According to the Conseco defendants, PRG removed all of its material from the subject premises, and thus, has no claim against the subject premises. PRG notes that Lehner and Campbell have stated in their affidavits that PRG installed extensive plumbing, electrical wiring and conduit, large steel beams, rigging, hydraulic power units, and other items. The Conseco defendants contend that PRG was responsible for such items only to the extent to support the illusions. Consequently, those conflicting claims raise an issue of fact.
The Conseco defendants argue that, as a matter of law, PRG cannot assert a claim for quantum meruit or unjust enrichment against Conseco. Conseco contends that it has no obligation to pay PRG for its work. According to the Conseco defendants, the existence of the July 1997 agreement precludes PRG's attempt to recover in quasi-contract. PRG claims it has a claim against Conseco based on unjust enrichment, not quantum meruit.
PRG's sixth cause of action alleges that Conseco was unjustly enriched. The fifth cause of action seeks to recover the fair and reasonable value of PRG's work, labor, and services provided and materials furnished in connection with the subject premises, which is commonly described as quantum meruit (see Cohen v Grainger, Tesoriero & Bell, 81 NY2d 655, 658 [1993]). Quantum meruit is a legal obligation imposed to prevent a party's unjust enrichment (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388 [1987]).
PRG argues that Conseco's counterclaim, based on the allegedly poor quality of PRG's work, estops Conseco from claiming that it did not receive a benefit from that work. In any event, questions of fact regarding PRG's installations and Conseco's use of the subject premises preclude the court from dismissing PRG's fifth or sixth causes of action as a matter of law. Even though PRG had an agreement with LateNite, PRG has presented evidence that it performed work not included in the July 1997 agreement, which would provide a basis for recovery in quasi-contract (id.).
PRG claims that the Conseco defendants' motion must be denied because it is not supported by an affidavit of a person with knowledge of the facts. PRG did not identify any specific instance where such omission was fatal to the Conseco defendants' arguments. Because the court denies the Conseco defendants' motion for summary judgment, the court does not need to address whether the affidavits submitted by the Conseco defendants were deficient.
Accordingly, it is hereby
ORDERED that the motion of PRG Planning and Development LLC for partial summary judgment is denied; and it is further
ORDERED that the motion of Conseco Variable Life Insurance Company, Conseco Annuity Assurance Company, and American Casualty Co. of Reading, PA for summary judgment is denied.
Dated: March 24, 2004
ENTER:
[*8]
_________________________
 J.S.C.